Chief Justice Simpson
delivered the opinion of the Court.
This was an ordinary proceeding by petition in which Graham was plaintiff and Swigert was defendant on a supersedeas, bond executed by the defendant as security for Strader, Gorman, and Armstrong, to remove a case decided by this Court, to the Supreme Court of the United States.
Graham filed a bill in the Lousiville Chancery Court against Strader and Gorman as owners of the steamer Pike, to recover damages for the asportation of three slaves from Lousville, Ky., to Cincinnati, Ohio, and their consequent escape to Canada. A decree was ren *523 dered by the Chancellor, which was not satisfactory to the parties, and the case was brought to this Court, and the decree reversed on the errors assigned by Graham. (See opinion 5, B. Monroe 173.)
After the return of the cause to the Lousville Chancery Court, on the 6th day of November 1845, that Court rendered the following decree, viz:
“The Court being now advised, and the jury em-pannelled herein having found the facts submitted to their inquiry for the complainant, and assessed his damages at $3,000, it is now ordered and decreed that the complainant is entiled to have so much for his damages by him sustained, &c., and unless the said sum be paid by the 15th day of this month, or the said steamboat Pike, her engine, tackle, and furniture, be then forthcoming to be sold for the purpose of raising the same, together with the complainants’ costs, &c., and in as good plight and condition,as when the bond of said Armstrong and C. M. Strader herein was executed, or of a value sufficient to satisfy the said sum and costs, the Court will make such order as shall be necessary, against the obligors in said bond to enforce said judgment, &c.”
Afterwards, viz ; on the 28th day of the same month, the following order was made. This day “ came the complainant, by his council, and produced a copy of the order or decree herein, with an endorsement threon of its service on Charles M. Strader, and John Armstrong, and they not appearing in Court, although now solemnly called, whereupon and by the consent of the parties said decree is to stand and be considered as a final decree in the cause, from which an appeal may now be taken.”
The case was accordingly brought to this Court upon an appeal by the defendants, and the decree affirmed at the June term, 1847.
Thereupon the case was removed by the defendants to the Supreme Court of the United States, and the • supesedeas bond upon which this action was brought, *524 was executed. The act of Congress under which the proceeding was had requires the plaintiff in error to give good and sufficient security that he shall prosecute his writ to effect, and answer all damages and costs if he fail to make his plea good. (1, Story’s laws, U. S. p. 60.) In December, 1850, the Supreme Court of the United States dismissed the writ of error, upon the' ground that the Court had no jurisdiction of the case. The supersedeas bond sued on, is in the penalty of six thousand dollars, and contains the following condition, viz: “Whereas the Louisville Chancery Court, on the 2Sth day of November 1S45, in a chancery suit wherein the said Chistopher Graham was complainant, and said Jacob Strader, James Gorman, and John Armstrong were defendants, decreed, that the decree of the 4th of November, 1845, against the said Jacob Strader, James Gorman, and John Armstrong for three thousand dollars, should stand with costs, from which said decree, the said Strader and others prayed an appeal to the Court of Appeals for the State of Kentucky, and on the 4th day of October, 1847, the Court of Appeals affirmed the decree of the Louisville Chancery Court with damages and costs, and the said Jacob Strader, James Gorman, and John Armstrong having sued out a writ of error to the Supreme Court of the United States to reverse the said decree and affirmance. Now the condition of the foregoing obligation is such, that if the said Jacob Strader, James Gorman, and John Armstrong shall prosecute the said writ of error with effect, or on failure thereof, shall pay to the said Christopher Graham, the amount of the decree of the Louisville Chancery Court, with the damages and costs and all damages, interest, and costs that may be awarded against them in the Supreme Court of the United States, then this obligation to be void, otherwise to re-hrain in full force and virtue.
The plaintiff in the petition, claimed thereon, and prayed judgment against the dependant for, three thousand dollars, ■ the amount of the decree of the Louisville Chancery Court with interest thereon from *525 the 4th November, 1845, and the costs of said chancery suit in the Louisville Chancery Court, and in the Court of Appeals.
The defence relied upon.
The judgment of the Circuit Court.
The defendant, in his answer, contended that he was not liable upon the bond for the three thousand dollars, ascertained by the decree of the Louisville Chancery Court, to be due to the plaintiff, or for the costs of that suit or for any thing except the costs in the Court of Appeals. He insisted that'the bond, according to its legal effect, did not impose upon him any such responsibility ; and if it did, that it was more comprehensive than was required by law, and was executed by the mutual mistake of himself and the Clerk of the Court who took it; as he only agreed or intended to execute such a bond as the Clerk was authorized and required by law to demand and take. And further, that the condition in the bond to pay the amount of the decree of the Louisville Chancery Court, wras made and inserted by the Clerk without order or authority of law, and was not obligatory, but the bond, in consequence thereof, was wholly void and inoperative.
The parties, by consent, submitted the law and facts of the case to the Court, without the intervention of a jury, and the Court decided that the defendant was only liable upon the bond for the costs in the Court of Appeals, and not for the amount of the decree of the Louisville Chancery Court, and rendered judgment accordingly. From that judgment the plaintiff has appealed.
It is obvious that the stipulations contained in the bond, are sufficiently broad and comprehensive to secure the payment of the amount, to which the plaintiff was entitled under the decree of the Louisville Chancery Court. The legal effect of the bond is therefore the subject to be examined and considered; and this depends in a great degree upon the nature and character of the decree referred to. If it were substantially a decree against the defendants for money, then there can be no question that the law required them, in case they appealed, or suspended its execution by *526 the supersedeas, to secure to the plaintiff the payment of the amount, and the bond imposes a liability to that extent upon the obligors.
The condition of the bond required by the act of Congress is substantially the same' as is required by the laws of this State in the case of appeals from judgments and decrees. It is therefore contended, that the decisions of the court upon the effect of such bonds, must determine the extent of the obligation of the surity in this case ; and that according to the principles of those decisions, he is not liable for the amount of the decree of the Louisville Chancery Court.
The cases referred to for the purpose of sustaining this proposition, are Talbot vs. Morton, (5th Litt. Rep. 326.) and Sumrall, et. al., vs. Reid, (2., Dana 65.) In both these cases an appeal was taken from a decree to foreclose a mortgage on real property, and subject it to sale for the payment of judgments at law. In the first it was held that the bond was sufficient, although it did not secure the payment of the judgment at law, as the decree rendered was against the mortgaged estate, and there was no decree for money. And the Court in that case said,, “it cannot be contemplated by law, that the bond should secure the real estate or its value, or that accidents of fire and destruction of the estate are to be provided for in the bond. In the case of Sumrall, et. al., vs. Reid, supra the appeal bond was conditioned to pay the amount recovered by the decree, and costs ; and it was decided that there was nothing recovered by the decree, and it only subjected the real estate in the mortgage to the payment of a judgment at law, there was no liability on the surety for the debt.
The principle attempted to be deduced from these cases is, that the law prescribes one uniform condition to such bonds, but discriminates between the liability imposed by a breach of the condition, in the different classes of cases. In appeals from a judgment or decree in personam the liability extends so far as to secure *527 the judgment or decree ; but that in appeals from a decree in rcm, the demand asserted in the suit, and to obtain the payment of which the proceeding is instituted, is not secured b)' the bond.
In ense of appeal or writ of error from decrees oí foreclosure, the appeal or snpersedeas-bonrl does not secure the debt for which the-land is directed to be sold: (5 Lilt., 365.)
The same might, be the case where personal •properly was attached and sold, and the fund in thr- hand of the Court. See Worth, &r... vs Smith, (5 B. Monroe, 504.) 33ut it might be different where the pioperty attached has not been sold, or was in the possession of defendant — argu.
*527 These cases have not settled the doctrine in the manner and to the extent contended for. They only decide that in cases where there is a mere decree of foreclosure made for the purpose of subjecting real estate to the payment of judgments at law, and an appeal is taken, that the bond required by law does not secure the amount of the demand for the payment of which the land is decreed to be sold. This, according to the reasoning of the Court in the first case, results, in some measure, from the nature of the property which is looked to for the security of the debt. It is permanent, and not subject to loss, removal, or distraction, and consequently a stipulation in the bond, for its security is unnecessary, and not contemplated by law.
If however, it he conceded, that the same doctrine ought to apply, to all decrees merely for the sale of mortgaged property whether personal or real, it by no means follows, that it ought, to be extended to that class of cases, where personal property is attached by a proceeding in chancery instituted for the purpose of obtaining the payment of the complainants demand, where the debtor has a right to retain the property by executing a bond, especially when the appeal is taken by the debtor himself, having the property in his possession at the time. The effect of the appeal may be to diminish very materially, if not to destroy the security if the complainants demand, by postponing the execu-ion of the decree, until the sureties in the bond execu-ed by the debtor, become insolvent, and the property tself be consumed or disposed of, and placed beyond he reach of the creditor.
In the case of Worth et al vs Smith, (5 B. Monroe, 04,) it appeared that a number of creditors were proceeding at the same time to subject, by attachments, the Steamer John Mills, to the payment of their sever *528 al debts, that the steamer had been sold, and the proceeds of the sale were under the control of the Court. In that state of case, a contest arose among the creditors, about the disposition of the fund, and part of the creditors being dissatisfied with the decree of the chancellor upon the subject, appealed to this Court, and the decree was affirmed. A suit was then brought by the preferred creditors, against the surety in the appeal bond, and it was held that he was only liable for the costs and damages awarded in this Court, and not for the sums decreed to the creditors out of the fund for distribution. The ground of the decision was, that the appeal did not affect the security of the fund, that notwithstanding the appeal, it remained under the control of the chancellor, who was not thereby restricted from taking any step which he might deem proper to secure it. This case does not, however, settle the principle that an appeal taken by the debtor from a decree to sell personal property which had been attached and remained in his possession, would not impose any liability upon the obligors in the appeal bond, for the amount of the decree. It seems rather to authorize an opposite inference, inasmuch as in the case last mentioned, the appeal would have the effect to suspend the action of the chancellor altogether, and deprive him of ail control over the property, and of all power to provide for its security.
Where there is a personal decree and it is suspended by writ of eiror to the Supreme Court of t>e U. S , the surety in the bond is liable for the whole amount of the de* cree upon its af-firmance in that Court. Though a steam boat may have been attached which wotüdalsobe Ha ble for the decree. Ihe proceeding being first in rent and in personam, but lastly in person• am, as the boat was not delivered.
*528 But lot this question be disposed of as it may, when it arises, the decree in this case in our opinion partakes of the nature of a personal decree, and was virtually and in effect a decree against the parties, for whom the defendant became surety in the bond; and consequently, is not within the operation of the principle applicable to the cases where the proceedings are exclusively in rem.
The statutes under which the proceeding was instituted in the Chancery Court, made the defendants liable to the action of the party aggrieved, either at law or in chancery: (1 Yol. Slat. Law, 260,) so that the chan *529 cellor had 1he power to render a personal decree against them, for the sum adjudged to the complainant. The boat or vessel, in which the slaves were removed out of the limits of the commonwealth, is also made liable, and may be condemned and sold to pay and satisfy the damage sustained by the complainant, and the costs of suit. But the proceeding against the boat, is merely ancillary to'the main object of the suit, and intended to aid in its accomplishment, by furnishing means to be applied to the satisfaction of the decree* The proceeding was not exclusively in rem, but was both in rem and in personam.
The damages sustained by the complainant had been ascertained, and a decree rendered for the amount. The defendants had been required to produce the attached property, and had failed to comply with the requisition. The chancellor could have ordered an execution to issue against them immediately for the sum decreed and the costs of the suit, or could have enforced'the payment of the amount, by proceeding against the parties in the bond executed for the forthcoming of the property. In this attitude of the case, the parties agreed that the decree pronounced should be treated as a final decree, and the defendants obtained an appeal. The effect of the appeal was to suspend the execution of the decree, and to prevent, the chancellor from ordering an execution to issue against the defendants, or to enforce the bond. The decree as it was rendered would not have authorized an execution to issue against the defendants without an additional order, but still the decree was personal, and imposed upon the defendants the duty to pay. the money to which .the complainant was entitled, and the enforcement of this duty was prevented by the appe'al. There Isa clear distinction between this case, and'the cases-dhat have been referred to. In those cases, the defendants were not personally liable and the chancellor ha-efe no power to order an execution to issue upon the J&j cree. In the case of Worth et ail vs Smith, the appeal *530 was not taken by the debtor, but by part of the creditors, whose claims had been postponed, and who of course were in no manner responsible for the fund in contest, and against whom no decree had been rendered for the payment of money. And in that case, the Court said, that as the surety might have executed the bond alone, without his principal, if he were to be made liable for the fund in contest which had been decreed to the preferred creditors, his liability would exceed that of his principal, against whom no decree for the payment of the fund or any part of it had been rendered. That reasoning however does not apply to this case. Here a decree had been pronounced against the principals of the surety. They were personally liable for the sums decreed. The appeal was evidently taken to prevent the enforcement of that liability’'. The nature of the proceeding had undergone a radical change. It had become, by the failure to deliver the property attached, exclusively personal. It was no longer a proceeding in rem, for there was no property for the chancellor to act upon. He could have proceeded against the surety in the bond, but his liability was personal. The remedy however was not confined to the liability of the surety, but extended to the defendants, who were personally liable for the amount of the decree by the express provisions of the statute which.authorizes the party aggrieved in sucha case, to sue in chancery.
If the chancellor had rendered a decree that the defendants should pay the sum adjudged to the complainant and the costs of the suit, or if he had ordered an execution to issue therefor against the defendants, there could then have been no contest, in respect to the liability of the surety for the amount of the decree. Is there any substantial difference between such a decree and the one that was rendered, and which the parties agreed to treat as final? Would not the extent of the liability of the defendants be fixed and determined by either, especially as the decree rendered was made final *531 by the agreement of the parties, and the chancellor had no power to increase or diminish the amount of damages adjudged to the complainant? and would not both the decrees be personal? These two essential features being similar, there seems to be no material difference in the substance of the decrees. In one case the clerk could issue an execution without any order of Court, in the other an order would be necessary to enable him to do it. That order the chancellor could and no doubt would have made, had not the defendants prevented him, by agreeing that the decree should be regarded as final, and then suspending its operation by an appeal.. It might be contended with great plausibility, that as the defendants by their own act, prevented* the Court,, from making the order, which would obviously have resulted from the state of the proceedings at the time,, and which would have been direct and personal in its character, and in case of an appeal have indisputably required the security, of the amount ordered to be-paid, if its payment were suspended, they should be regarded as having agreed that the decree as it stood,., should have the same legal effect, that it would have had, if an order had been made, requiring them to pay the amount, or authorizing an execution to issue against them for it. But whether their agreement should or should not be considered as imparting to it such a legal effect, we do not deem material, inasmuch, as it was a-decree for money, final in its character, for which the-defendants were personally liable, and the enforcement-of which against them personally, was suspended by the appeal, and subsequent writ of error from the Supreme Court, of the United States, prosecuted by them. The want of an order, requiring the amount to be paid, or authorizing an execution for it to issue against the defendants, affected merely the enforcement, of the decree and not the rights, or the responsibilities of the parties under it. And as it defined, and determined the extent of those responsibilities, and they were pecuniary and personal in their character, it *532 was in our opinion, of that description, which made it the duty of the defendants in executing the bond sued upon, to secure its amount, in the event of their failing to reverse it.
Harlan for plaintiff; M. Brown and Ripley, for defendant.
The decision of the Circuit Court, is in conflict with the views expressed, and the principles settled in this opinion, and is deemed erroneous.
Wherefore, the judgment is reversed and cause remanded for a new trial, and further proceedings consistent with this opinion.