SERVER (NAPIER v.). See Case No. 10,010.

---

## Case No. 12,674.

### SESSIONS et al. v. PINTARD.

[Hempst. 678.] 1

Circuit Court, Ninth Circuit. April 29, 1854. 2

APPEAL—BOND—ORIGINAL DECREE.

1. On failure to make an appeal good, the sureties in the appeal bond become liable to the extent of the penalty of the bond, and have no right to have a pro ratâ application of proceeds made, under the original decree, towards the extinguishment of their liability.

2. Nature and obligation of appeal bond.

Bill in chancery [by Richard H. Sessions, Daniel H. Sessions, and Sandford C. Faulkner against John M. Pintard], for an injunction, determined before the Hon. DANIEL RINGO, District Judge, holding the circuit court. Absent the Hon. PETER V. DANIEL, Associate Justice of the supreme court.

Pike & Cummins, for complainants.
S. H. Hempstead, for defendant.

BY THE COURT. This day came the complainants by Pike and Cummins, their solicitors, and the defendant by S. H. Hempstead, his solicitor, and by agreement the answer of said Pintard is to have the like

---

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

1 [Reported by Samuel H. Hempstead, Esq.]
2 [Affirmed in 18 How. (59 U. S.) 106.]

effect as if sworn to, and the complainants enter their general replication to the said answer in short on the record by consent. And, by consent of parties, this cause was submitted to the court, and came on for final hearing on bill and exhibits, answer and exhibits, and replication to the answer. On consideration whereof it is the opinion of the court, that the appropriation of the proceeds of the sale of the land. under the original decree referred to in the bill, was rightfully and properly made, and that the judgment mentioned in this bill is not entitled to any greater credit than that given by the said Pintard, as shown by the entry made on the record; and that the complainants are not entitled to the relief prayed for in their bill, and that the injunction ought to be dissolved, and the bill dismissed, for want of equity, with costs. It is, therefore, considered, adjudged, and decreed by the court here in chancery sitting, that the injunction heretofore granted in this case be and the same is hereby dismissed: and the defendant remitted to his judgment at law, and that the bill of complaint be and the same is hereby dismissed. And it is further ordered, adjudged, and decreed, that the complainants pay all the costs of this suit and execution issue therefor as at law. And the said complainants in open court prayed an appeal from said decree to the supreme court, and which is granted by this court, upon the complainants at any time, within six months from this date, entering into an appeal bond in the penal sum of six thousand dollars, with good and sufficient security to the said John M. Pintard, conditioned that the appellants aforesaid, shall prosecute their appeal to effect and answer all damages and costs, if they fail to make their appeal and plea good, and to be approved according to law; and, upon the filing of which in this court, the clerk is hereby ordered to send a transcript of this case to the supreme court, according to law.

The record entry in the suit at law. referred to in said decree, is in the words following, namely: "This day (21 April, 1853) appeared the plaintiff by S. H. Hempstead, his attorney, and admitted and acknowledged in open court on the record, that the sale of lands mentioned in the decree in the case of John M. Pintard, complainant, against Archibald W. Goodloe, defendant, in the circuit court of the United States for the district of Arkansas. in chancery. as such sale was made by Randolph Deaton. as commissioner. on the 15th day of November, 1852, as appears by his report, amounted to eight thousand and twenty-five dollars. and which has been appropriated and disposed of as follows, namely: to pay costs in the chancery case in the supreme and circuit courts, three hundred and twenty-nine dollars: commissioner's fee. one hundred dollars: and costs of advertising and executing the commission,

seventy-one dollars; making an aggregate for entire costs and expenses, five hundred dollars; thus leaving seven thousand five hundred and twenty-five dollars. applicable, as of the 15th of November, 1852, towards the extinguishment of the principal and interest of said decree in chancery, which, on that day, amounted, principal and interest, to sixteen thousand eight hundred and seventy-seven dollars; and from which, deducting said sum of seven thousand five hundred and twenty-five dollars, paid to the said complainant Pintard, leaves eight thousand nine hundred and twelve dollars. due on said decree in chancery of that date, and interest estimated on this balance to the 17th day of April, 1853, the day of the rendition of the judgment in this case, makes nine thousand two hundred and eighty-three dollars, as the amount actually due on said decree on the 17th day of April, 1853; and by reason of which premises, a credit of two thousand seven hundred and seventeen dollars ought to be and hereby is admitted as of the 17th of April. 1853, as a credit and payment on the damages assessed by the jury in this case on that day. to be noted and entered of record, and to be indorsed on any execution that may be issued on the judgment in this case."

NOTE. The appeal bond was given, approved, and filed on the 20th September, 1854, and the case removed into the supreme court of the United States, and was argued at the December term, 1855, by Mr. Pike, for the appellants, and Mr. Crittenden, for the appellee. 18 How. [59 U. S.] 106. The opinion of Mr. Justice McLean was delivered as follows:

"This is an appeal from the circuit court of the Eastern district of Arkansas. Pintard, on the 10th of April, 1847, obtained a decree against Archibald Goodloe for ten thousand five hundred and fifty-two dollars, with ten per cent. interest per annum on the amount decreed. There was also an order that a certain tract of land should be sold, and the proceeds applied to the payment of the decree. [Case No. 11,171.] An appeal was taken from this decree to this court, by which the decree was affirmed. [12 How. (53 U. S.) 24.] On the 20th of February, 1852, Pintard commenced an action against Sessions and others on the appeal bond, and at April term, 1853, obtained a judgment on the bond for the penalty thereof, amounting to the sum of twelve thousand dollars. At the same time Pintard procured an order for the sale of the land specified in the decree, which was sold on the 15th of November, 1852, for the sum of eight thousand and twenty-five dollars: which, after paying the expense of the sale, left a balance of seven thousand five hundred and twenty-five dollars as a credit on said decree, as of the 15th of November, 1852. The interest, with the sum decreed, up to that period amounted to sixteen thousand eight hundred and seventy-seven dollars. The proceeds of the sale of the land being deducted from this sum, leaves a balance on the decree of eight thousand nine hundred and twelve dollars, with interest from the 17th day of April, 1853. The interest on this sum, up to the time judgment was rendered on the appeal bond, makes the sum of nine thousand two hundred and eighty-three dollars. as the amount to be collected on the judgment. An execution was issued on the judgment the 14th May, 1853, for twelve thousand dollars, with an indorsement of a credit of two thousand seven hundred and seventeen dollars. This execution was levied on a

number of slaves, of the value of twelve thousand dollars, as the property of Sessions, the defendant. A delivery bond was taken for the slaves, with Daniel H. Sessions as security; but the slaves not being delivered on the day of the sale, an execution was issued against principal and surety on the delivery bond.

"At this stage of the proceedings a bill was filed by the appellants, complaining that the distribution which had been made of the proceeds of the sale of the land was inequitable, and that such proceeds should be credited on the judgment entered upon the appeal bond. pro rata, and not exclusively on the decree; and the complainants pray that Pintard may be decreed to enter a credit upon the judgment as aforesaid, as of its date, for the sum of five thousand three hundred twenty-three dollars and thirty-five cents; and that a perpetual injunction might be granted to prevent him from collecting any more than the residue of the judgment, after deducting the above sum. A temporary injunction was granted, Pintard filed his answer, and, upon the final hearing, the injunction was dissolved and the bill dismissed, at the costs of the complainants. From this decree an appeal was taken, and that brings the case before us.

"The complainants in their bill allege no fraud nor mistake, as a ground of relief. They claim that the money received under the decree for the sale of the land shall be applied, pro rata, in the discharge of the judgment against them, and the balance of the decree which remains after deducting the judgment. This would give to them a credit on the judgment of five thousand seven hundred and twenty-four dollars; and that Pintard, in claiming the whole amount of the judgment, seeks to recover from them three thousand five hundred sixty-eight dollars and ninety-nine cents, more than in equity he is entitled to. This claim of the appellants rests upon the ground that there was a lien on the land sold by the original decree, which operated as an inducement to them to become sureties on the appeal bond. The land, by the original decree, was directed to be sold; consequently the proceeds of the sale could be applied only in discharge of the decree. On what ground could the appellants claim a pro rata distribution of this fund? They were bound to the extent of the penalty of their bond, on which a judgment was entered. They had a direct interest in the application of the proceeds of the land to the payment of the original decree, including the interest and costs; and so much as such payment reduced the original decree below the amount of the judgment against them, they were entitled to a credit on the judgment. The judgment has been so made and the credit entered, and beyond this they have no claim either equitable or legal.

"In the argument a subrogation of the land or its proceeds, for the benefit of complainants, is urged; but on what known principle of equity does not satisfactorily appear. Had the appellants paid the decree in full, they might have claimed a control over the land decreed to be sold, or its proceeds. They made no payment, but assert a general equity to have the fund applied, pro rata, on their judgment. This would leave a large amount of the original decree unsatisfied. On what ground could Pintard be subjected to such a loss? He looked to the land and the surety on the appeal bond, which more than covered his decree, including interest and cost. The condition of the appeal bond was, 'for the prosecution of said appeal to effect, and to answer all damages and costs, if there should be a failure to make the plea good in the supreme court.[3] There was a failure to do this, and the penalty of the bond was incurred. Whatever hardship may be in this case is common to all sureties who incur responsibility and have money to pay. Beyond that of a faithful application of the proceeds of the land in pay-

[3] [See annotation in the next column.]

ment of the decree, the appellants have no equity. They cannot place themselves in the relation of two creditors having claims on a common fund, which may be distributed pro rata between them. Pintard has a claim on both funds; first, on the proceeds of the land, and, second, on the judgment entered on the appeal bond for the satisfaction of the original decree. The decree of the circuit court is affirmed, with costs."

[Annotation referred to, ante.]

Nature of Appeal Bond. The judiciary act of 1789 (1 Stat. 85) requires a party who appeals to the supreme court to give good and sufficient security to prosecute the appeal to effect and answer all damages and costs if he fail to make his plea good. This is the only condition prescribed, and must be followed, substantially, in equity and common law cases. [Catlett v. Brodie] 9 Wheat. [22 U. S.] 553. The meaning of the words "prosecute with effect," in an appeal bond, is that the appellant will prosecute the decree to a successful termination, that is to say, that he will reverse the decree. It may be considered an engagement on his part to achieve that result. Karthaus v. Owings, 6 Har. & J. 264; Fowler v. Wilson, 4 Ark. 210. The meaning of these words, furthermore, is, that if the appellant shall fail in that respect, the sureties become liable for the payment of the whole amount decreed. Thus in Evans v. Hardwick, 1 J. J. Marsh. 435, it was held that the legal effect of a bond conditioned simply "for the due prosecution of the appeal," will bind the parties for the payment of the debt as well as the damages and costs on the affirmance of the judgment or dismissal of the appeal. And so in Harrison v. Bank of Ky., 3 J. J. Marsh. 375, it was decided that where the law prescribed that an appeal bond should be conditioned for the due prosecution of the appeal, and an appeal bond was given conditioned for "the prosecution of the appeal with effect, or on failure to do so, that the obligors should pay the amount of the judgment and all damages and costs which might be adjudged against them in consequence of the appeal," that this condition was not more extensive than a fair exposition of the law would justify. Feemster v. Anderson, 6 B. Mon. 540. And to the same effect is the case of Moore v. Govin, 2 Litt. (Ky.) 186; and Talbott v. Morton, 5 Litt. (Ky.) 327.

These cases decide that a bond for the due prosecution of an appeal, is equivalent to an obligation to pay the judgment, if the same shall be affirmed on appeal. And this is the justice and good-sense of the matter. And the dismissal of an appeal has the effect of an affirmance within the meaning of an appeal bond. 1 J. J. Marsh. 436; 3 J. J. Marsh. 375; 2 Dana, 65.

The intention of the law in all these cases is to secure the payment of the debt in the event of failure to succeed. Evans v. Hardwick, 1 J. J. Marsh. 435; Butterworth v. Brown, 7 Yerg. 467; 12 B. Mon. 523. In the supreme court of Arkansas, in the case of Fowler v. Thorn. 4 Ark. 208, it was held that a bond conditioned that the plaintiff in error would prosecute the writ with effect, denoted and expressed that he would succeed in the action, and that if he did not the obligors in the bond would pay the money for his failure. And it was also said that where the condition of the bond is "that the plaintiff in error will prosecute the writ with effect, and pay the money adjudged against him by the supreme court, or otherwise abide its judgment," the mere affirmance of the judgment in the supreme court binds the parties to the bond to pay the debt, damages, and costs in both courts. And it was further said, that it was the same thing whether the supreme court adjudges the money against the party directly, or orders the circuit court to adjudge it. Now a literal construction of the bond, in the case just cited, would have precluded the recovery of any thing except the costs adjudged by the supreme

court on the affirmance of the judgment; for that was all directly adjudged by the supreme court. But regarding substance, not form, that construction so well expressed in the ancient maxim, "Qui hæret in literâ, hæret in cortice," was, as it should be in such cases, repudiated. 3 T. B. Mon. 391.

The nature of the breach on an appeal bond sheds some light on the extent of the liability, and may be usefully referred to determine it. Now, in assigning a breach of an appeal bond, it is sufficient to allege that the defendant did not prosecute his suit with effect, that the judgment was affirmed, and that the debt and costs had not been paid. Wood v. Thomas, 5 Blackf. 553; Fowler v. Thorn. 4 Ark. 208; Fournier v. Faggott, 3 Scam. 349; Gregory v. Stark, 3 Scam. 612. That is a good breach, thus showing that the non-payment of the debt is the very gist of the action. And for that reason an appeal bond should be for double the amount of the debt, damages, and costs, as held in Norwood v. Martin, 3 Har. & J. 199. It must be sufficient to cover the judgment below. Shannon v. Spencer, 1 Blackf. 120. The intention of the judicial act of 1789 was to provide for and secure the payment of the judgment or decree in the event of a failure to prosecute, or after prosecution on failure to reverse the judgment or decree. This is clear. 1 J. J. Marsh. 193; 1 Stat. 87. If the law had simply provided that the condition of the bond should be for the prosecution of the writ or appeal with effect, we have seen that language of itself, according to its legal import, would oblige the parties to the bond to satisfy the judgment or decree. With these words, and no more, the sureties would be liable to the extent of the penalty of the bond at least; and the obligee it is said can recover interest on the penalty from the institution of the suit on the bond. Ives v. Merchants' Bank, 12 How. [53 U. S.] 159.

In the last case the supreme court held that the security in an appeal bond could be sued and judgment had against him without proceedings against the principal. And also that the security was positively bound to the amount of the bond. But under the act of 1789, not only does the appeal bond provide for a prosecution of the case to effect, the meaning of which has been explained; but out of abundance of caution contains the further engagement "to answer all damages and costs if he fail to make his plea good." The word "answer," in this connection, means to pay or satisfy; and that is one of the meanings of the word, and probably the most common, when the word is used in laws or judicial proceedings. Lincoln v. Beebe, 6 Eng. (Ark.) 697; 1 Bouv. Law Dict. And so, too, the technical term "plea," is used to denote the removal of the cause into a superior court, and in which the appellant assumes the attitude of plaintiff. "Plea," in its ancient sense, meant suit or action, and is sometimes used in that sense. Steph. Pl. 38, 39, note 9; 2 Bouv. Law Dict. 325. The condition of a bond under that act is broad enough to, and was in fact intended to secure and cover what had been adjudged, and what might be adjudged in the shape of damages and costs in the appellate tribunal. It was to provide for both—it was to furnish ample security for the whole debt. The word "damages," does not mean the nature of the action or kind of suit; but denotes the amount adjudged, whether called debt, damages, interest, or by any other name. The act is not, nor is the condition of the bond limited to such damages and costs as the supreme court on the appeal or writ of error shall adjudge, if any, for the delay. If this was the correct interpretation, then in cases where the supreme court dismisses, or dockets and dismisses, or does not award damages, or the party fails to prosecute the case, the opposite party is without indemnity, for the bond is worse than nothing, and affords no security for the debt at all. Now it cannot be denied that in these cases there is a remedy on

the bond, and that must necessarily be for the amount of the judgment or decree complained of. Duncan v. McGee, 7 Yerg. 103. The idea here advanced has been sanctioned by the supreme court in the case of Catlett v. Brodie, 9 Wheat. [22 U. S.] 553. In that case the court repudiated the argument that the act only provided for damages and costs adjudged in the supreme court, and held that the word "damages" was there used not as descriptive of the nature of the claim upon which the original judgment was founded, but as descriptive of the indemnity which the defendant was entitled to if the judgment was affirmed. "Whatever losses," said the court, "he may sustain by the judgment not being paid and satisfied after the affirmance, these are the damages which he has sustained, and for which a bond ought to afford good and sufficient security."

This case is conclusive of the present question, because the court required the plaintiffs in error to give bond, with good and sufficient security, in due form of law, in an amount sufficient to secure the whole judgment, conditioned to prosecute his writ with effect and to answer all damages and costs if he fail to make his plea good, and the case to stand dismissed on failure to give such bond. 1 J. J. Marsh. 193. The previous bond had been given in a small sum only sufficient to respond to such damages and costs as might accrue in and be adjudged by the supreme court, but not sufficient to secure the debt. In fact it is difficult to conceive how a different opinion could be entertained; because as the judges of the United States have no authority to take any other bond than the one prescribed by this act; and in practice, take no other, as is manifest from the case in 9 Wheat. [22 U. S.] 553, it follows, that if the debt is not embraced and secured by the bond in this case, it cannot be in any, and so congress has legislated in vain, and a person may be harassed by a long litigation, without any thing in the shape of indemnity or security from his adversary. This is against the whole policy of the law, for that is to end litigation speedily, and discourage frivolous or unfounded appeals from one court to another; and especially that the party who takes an appeal shall not be suffered to tie up the hands of his adversary and suspend all action on his judgment without securing the payment of it on failure to succeed. This is just and reasonable, and accords with the manifest intention of the law; because an appeal entirely vacates the decree appealed from. Paine v. Cowdin, 17 Pick. 142; Davis v. Cowdin, 20 Pick. 510. A supersedeas operates to set aside and annul the act. 9 Bac. Abr. 274. After an appeal, all authority on the part of the inferior court over the cause, entirely ceases; and every act and proceeding of such court is void. The judgment or sentence becomes wholly inoperative (Tealon v. U. S., 5 Cranch [9 U. S.] 281; The Venus, 1 Wheat. [14 U. S.] 113); even though the appeal be not prosecuted (Campbell v. Howard, 5 Mass. 376; [Penhallow v. Doane] 3 Dall. [3 U. S.] 87, 119; 13 Mass. 266; Coxe [1 N. J. Law] 159; Davis v. The Seneca [Case No. 3,651]). Now, after appeal, the judgment or decree is considered as lost to the party, and the appeal bond is substituted for it. The decree becomes entirely unavailable to the party in whose favor it was rendered, and if a person can be said to have lost what cannot be obtained, then it is clear that the appellee, by virtue of the appeal and supersedeas, has lost the money decreed to him. Whether he may get it at some future time, or on some future contingency, is quite a different question. The lapidist who loses a valuable diamond, has hopes of its recovery; and although it may be regained at some future time, yet it is lost for the present.

The amount of the judgment or decree is at least primâ facie evidence of the measure of damages, conceding that it is competent for the defendants to show that no damages have been

sustained, or only partial damages, which seems to be intimated in the case in 9 Wheat. [22 U. S.] 554; still this must come from the defence in mitigation, because when the plaintiff has shown an appeal and supersedeas of the decree, the affirmation of the decree, and the non-payment of the decree. he has made out to say the least, of it, a primâ facie case, which entitles him to recover the amount of the decree, and costs and damages, if within the penalty of the bond, and if beyond it, then the amount of the penalty, with interest on it from judicial demand, according to the case in [Ives v. Mechanics' Bank of Boston] 12 How. [53 U. S.] 159. He is not obliged to prove that he could have made the amount of the decree out of the principal, or give any evidence of the solvency of the principal in the bond. He has established a right in himself and a presumed loss. and that is enough in the first instance. 17 Wend. 545; 9 Johns. 300. The right and remedy are perfect, because the moment judgment is rendered in an appeal cause, if the money is not paid immediately, the condition of the bond is forfeited, and an action can be brought upon it at any time before that judgment is actually satisfied. Gregory v. Stark, 3 Scam. 612. And execution against the principal is not necessary. [Ives v. Merchants' Bank of Boston] 12 How. [53 U. S.] 159. The same rule applies in actions against sheriffs for escapes, or taking insufficient bail. The plaintiff is entitled to recover his whole debt, which is presumed to be lost by the negligence. That is the measure of damages; and circumstances of mitigation must come from the defendant. 3 Conn. 423; 17 Wend. 547; 2 Cow. 504; 6 Pick. 468; 9 Conn. 380; 9 Johns. 300; 11 Mass. 89; 13 Mass. 187; 17 Wend. 543. And such is the rule for a failure to execute or return final process. 6 Hill, 550; 1 Hill. 275; 10 Mass. 474; 11 Mass. 89; 9 Johns. 300; 3 Denio, 327. See 8 Ala. 285; 1 La. Ann. 122; 17 Ohio, 244.

A creditor having several remedies, may pursue any one or all of them until he obtains satisfaction, but can, of course. only have one satisfaction. Tayloe v. Thomson, 5 Pet. [30 U. S.] 369. The plaintiff may proceed with a fi. fa. on his judgment, and at the same time sue the appeal bond to enforce payment of the same judgment. Sasscer v. Walker, 5 Gill & J. 102. Hence Pintard might proceed on the appeal bond, and also proceed on the decree against the estate of Goodloe; and could bring separate suits on the appeal bond, but can have but one satisfaction. Dig. 621, 806; 4 Ark. 510; 1 Eng. (Ark.) 92. The rule of 30th of March, 1839, adopted the forms and modes of proceeding and the practice in the state courts, to be used in this court: excepting by a subsequent rule of June 25, 1841, the sections relating to discovery in suits at law.