## John Kountz *v.* Price and Dickson.

1 Principal and Agent : Ratification.—Where the principal, with full knowledge of the facts, ratifies the acts and doings of his agent, who acted without authority, he will be bound thereby as fully as if the agent had express authority to act in the premises.

2. Illegal Contracts : Subsequent Agreements, Dependent on, Void.—Where an original contract is illegal, any subsequent contract, which carries it into effect, or is made to rest upon the original consideration, or is traceable back to it, is illegal and void, though the party against whom the contract is sought to be enforced may have derived a benefit from the contract. If the subsequent promise be disconnected from the original contract, and founded on a new consideration, it is not tainted with the illegality of the original contract. *Collins* v. *McCargo*, 6 S. & M. 128; *Adams* v. *Ronan*, 8 Ib. 638; *Torry* v. *Grant*, 10 Ib. 97; 14 Ib. 29; *Wooten* v. *Miller*, 7 Ib. 386; *Armstrong* v. *Toler*, 11 Wheat. 258.

3. Illegal Contracts : Contracts made on Sunday : Case in Judgment.—Contracts made on Sunday for the sale or barter of wares or merchandise, goods or chattels, are illegal and void. If the terms of the contract are settled on Sunday, and the execution of it deferred to the next or some other day, the contract is void. Where the contract has its inception on Sunday, and is completed some other day, the contract is not illegal. K. agreed with P. & D. to exchange salt for cotton. The agreement for the exchange, and the delivery of the salt, was made on Sunday. The cotton was not delivered at the time. Subsequently, P. & D. gave their note for the amount of cotton agreed to be given in exchange for the salt. Held—That the note was void.

ERROR to Special Court of Equity at Jackson.   Hon. George T. Swann, judge.

The facts of the case are fully stated in the opinion of the court.

*F. J. Wharton* and *Wm. Yerger,*for plaintiff in error, contended,

1. That though the salt was delivered on Sunday, yet the note was not executed until some time afterwards, and is therefore not void.

2. That defendants in error insisted that the contract for the exchange of the salt was made on Sunday, and therefore void. If this be so, then the title to the salt never passed to defendants, and remained in Kountz, and Dickson and Price being in possession, it could have been recovered of them in an action of trover or detinue ; or by a subsequent agreement defendants could have been permitted to retain the salt upon their agreeing to pay for it, and such subsequent agreement would have been valid.   In Alabama and other States it is held, that if a horse is sold on Sunday, and a note taken for the purchase-money on the same day, both the sale and the note are void, and the title to the horse remains in the vendor. 10 Ala. 566 ; 11 Ib. 885 ; 13 Ib. 390 ;   2 Douglas R. 73 ; 26 Maine, 464.

3. That if the contract of exchange was void, and the property in the salt remained in Kountz, it cannot be disputed, that if on a subsequent day he permitted them to retain his property, and they promised to pay him for it, their promise to pay being made for property belonging to him, is founded on a valid and sufficient consideration, and can be enforced.   *Williams* v. *Paul,* 6 Bing. R. 653 ; *Adams* v. *Gay,* 19 Vermont, 358.

4. That a contract must be fully consummated on Sunday to make it void.   18 Vermont, 379 ; 19 Ib. 368 ; 6 Bing. R. 653 ; 6 Vermont, 219 ; 3 B. & C. 232 ; 11 Ala. R. 855.

*W. P. Harris,* for defendant in error, cited following authorities : *Wooten* v. *Miller,* 7 Sm. & M. 386 ; *Collins* v. *McCargo,* 6 Sm. & M. 128.

HANDY, C. J., delivered the opinion of the court..

The appellant filed his petition in the Special Court of

Equity against the appellees, praying the specific performance of a contract in the following words :

JACKSON, December 8, 1864.

Due John Kountz, 9 bales cotton.

C. R. DICKSON and N. PRICE.

Alleging that said due-bill was executed in consideration of an agreement made by said Dickson and Price with the agent of petitioner for an exchange of salt for cotton, pound for pound, and that said agent delivered to them five thousand one hundred and twenty pounds of salt, belonging to petitioner, and they executed said due-bill, etc.

The case turned on the amended answer of the defendants, which stated that the contract on which the due-bill was founded was made on the Sabbath-day, and that the consideration being illegal, the contract sought to be enforced was void. The petitioner took the deposition of Reinheimer, who testified that in September, 1864, he saw petitioner in Mobile, and he requested him, the witness, to see Dickson or Price, and ascertain whether either of them wanted to exchange cotton for salt, Kountz having salt in Jackson; the cotton to be good and well baled, and to be exchanged pound for pound. The day after witness returned to Jackson, he met Dickson and asked him about it, and he said he wanted to see Price, who was absent, but he would telegraph him about it ; that a few days after this, on Sunday morning, Dickson came to witness's shop and asked him who was agent for the salt, that Price wanted it that day; and witness told him he was not petitioner's agent, but he was a friend of his, and that witness would make the arrangement or take the responsibility of so doing, exchanging a pound of salt for a pound of cotton; and that Dickson told witness to give him the order for the salt, that he might get and send it to Price that evening, and that he would make the arrangement on these terms ; that when Price came to Jackson, witness told him he ought to do justice to Kountz, and he said he would; that it was all right; that witness telegraphed to Kountz to come to Jackson and settle the mat-

ter, and he came and saw Price and Dickson, and they promised him the cotton in any direction he wanted it. On cross-examination, he testified that he told Dickson when he got the salt that witness could not take the cotton; that he had no more to do with it than to exchange salt for cotton, pound for pound; that the trade was made on Sunday, and the salt was delivered on that day. Petitioner testified that the due-bill was executed on a week-day—not Sunday; that he had salt in Jackson which he wished to exchange for cotton; that he told Reinheimer in Mobile, when he returned to Jackson to see Dickson and Price, if they would exchange with him cotton for salt; that Reinheimer, on his return, telegraphed witness that Price and Dickson would make the trade, and for witness to come up immediately; that he did not authorize Reinheimer to make any trade, but only to inquire what the parties were willing to do; that witness learned from persons from Jackson that Dickson and Price had taken the salt, and was much surprised, as he had given no order for it; that as soon as possible witness came to Jackson, saw Dickson, who said he would make it all right; and he told Dickson he had come expressly to make the contract and get the cotton for the salt. Dickson said that Price was absent, and that he did not know the amount of the salt taken, and that Price would have to arrange it; that after waiting a month or more, witness came again to Jackson and saw Price, who told him he had nine bales of cotton at Newton station, and that would be about the amount he owed him, and that he would in a short time go down to Mobile and give witness the proper receipts for the cotton, and in the meantime Price gave him the due-bill, which he said he would take up by giving him the receipts for the cotton; but he has entirely failed, and since has frequently promised to give him cotton in payment, but has failed; that the due-bill was executed about two months after Dickson got the salt from Reinheimer, and he is certain that it was not executed on Sunday.

The decree dismissed the petition, and this appeal was taken.

The first question is, whether the act of Reinheimer, in selling and delivering the salt, was binding on the appellant.

It is urged that he was not the agent of the appellant, and had no authority to make the sale. The testimony of Reinheimer and that of the appellant show that he was not positively authorized to make the sale. But the petition alleges that the due-bill was made in pursuance of an agreement made by Dickson and Price " with the agent of petitioner," for an exchange of salt for cotton; and it is not pretended that any other person than Reinheimer was referred to. After this allegation in the petition, it was not competent for the petitioner to gainsay the authority of Reinheimer to make the sale. But whether he had authority at the time or not, is immaterial, since it clearly appears by the testimony that he ratified the act, and subsequently acted on it throughout the transaction.

The next question is, whether the contract sought to be enforced comes within the inhibition of the statute, Rev. Code, 609, article 226, which enacts that " no merchant, shop-keeper, or other *person*, except apothecaries and druggists, shall keep open store, or dispose of any wares or merchandise, *goods or chattels*, on Sunday, or *sell or barter the same*," upon penalty therein prescribed. It is not denied that the salt, for which the note was given, was sold and delivered on Sunday; and it is clear that the note was founded solely on that consideration, and was executed for the purpose of securing to the appellant the benefit of the contract agreed on at the time of the sale. It is conceded by counsel for the appellant, that the note would have been illegal and void if it had been executed on Sunday. But it is insisted that, inasmuch as the sale was void, the salt remained the property of the appellant; and that the execution of the note on a subsequent day was an affirmance of the contract, which was originally void, and rendered the subsequent transaction valid; that the salt being the property of the appellant, in consequence of the prior sale being void, was a good consideration for the note, which became a new and substantive contract, relieved of the previous illegality.

This doctrine, it must be admitted, is sanctioned by several cases cited in behalf of the appellant, *Williams* v. *Paul*, 6 Bing. 653; *Bloxsome* v. *Williams*, 3 Barn. & Cress. 232; *Adams*

v. *Gay,* 19 Vermont, 369 ; and 11 Ala. 855.    We have examined these cases—except the last, which we have not had access to— and we are constrained to say that they are founded on reasons which appear to us to set aside the most reverend and firmly settled principles of law applicable to the subject of illegal contracts.    Were we to follow them, we would have to overrule principles repeatedly and invariably recognized by this court.

Before adverting to the true rules governing the question, it must be borne in mind, that the contract was fully agreed on between the parties to it on Sunday, and the goods were delivered to the purchaser on the same day; and that nothing was done in the completion of it, on the subsequent day, but the execution of the note, which was wholly in consideration of the sale and delivery of the goods on the previous day.    There is no question that the sole consideration of the note was the previous sale, and there can be no doubt that, in law, it is but evidence of the contract proceeding from the sale, and was founded wholly on that contract.    It is, therefore, but a continuation of that contract, and must stand or fall by the consideration on which it rests.

The principles applicable to such cases are so familiar to every one, that a statement of them would be inexcusable, were they not set at naught by the doctrines held in the cases above cited.    We must therefore recur to these principles, which we supposed had ripened into axioms of the law, commanding universal respect.

"The principle of public policy is this," says Lord Mansfield, in *Holman* v. *Johnson,* (Cowp.) "*Ex dolo malo non oritur actio*—No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.    If, from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of the country, then the court says he has no right to be assisted."    See *Cuthbert* v. *Haley,* 8 J. R., 394.

Not to cite the almost numberless authorities, in England and this country, affirming this principle, and applying it to all sorts of contracts founded on illegal considerations, and to all

the phases into which they had passed, we will refer to a few of the numerous cases upon the subject in this court.

"The original contract being void," says the court, in *Collins* v. *McCargo*, 6 S. & M., "no valid agreement could be made to rest on the same consideration. They are all void, so long as they can be traced back, and made to depend upon the original illegal consideration."

Again, quoting and adopting the following rule as stated in *Armstrong* v. *Toler*, 11 Wheat. 258, "where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court will not lend its aid to enforce it. But if the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act." *Wooten* v. *Miller*, 7 S. & M. 386.

Again, "where the consideration of a contract is impeached for illegality, if the subject-matter of it can be traced back to an original illegal contract, the substituted security is void." 14 S. & M. 29; *Adams* v. *Rowan*, 8 ib. 638; *Torrey* v. *Grant*, 10 ib. 97.

It is worthy of observation, that, in none of the cases in England relied on for the appellant, is it attempted to be shown how the contracts subsequently reduced to form or, as it is said, affirmed, can be relieved of the vice of the original illegal consideration on which they are founded, or how they do not come under condemnation of the rule stated in *Holman* v. *Johnson*. They are meagre in reasoning, and do not appear to be based on any satisfactory principle. Moreover, they are not consistent with other decisions in England on the same subject. In *Smith* v. *Sparrow*, 4 Bing. 88, Best, Ch. J., said, he would not say that the mere inception of a contract on Sunday would avoid it, if completed the next day; but if most of the terms were settled on Sunday, and the mere signature referred to the next day, such a contract could scarcely be supported.

In the case in 19 Vermont, there is the same absence of reference to the principle that illegality of consideration taints the contract in its subsequent forms. But it is there said, that "contracts made on Sunday should be held an exception from

the general class of contracts which are void for illegality."
But upon what reason can such an exception be maintained?
Such contracts are not only positively prohibited by the law of
the land; but they are generally admitted, in Christian commu-
nities, to be in violation of the law of God.   Sound morality
would, therefore, appear to dictate that enactments of the legis-
lature, founded, as this manifestly is, on the divine law, should
at least have the same force, and be held at least as inviolable,
as the ordinary statutes prohibiting acts merely on grounds of
social or political convenience.   But the court says: "Such con-
tracts (those made on Sunday) are not tainted with any general
illegality; they are illegal *only as to the time* in which they are
entered into."   The same might be said of all contracts for
gaming, smuggling, usury, and everything else prohibited by
the law of the land, for reasons of public policy.   Contracts
arising under all such laws are only obnoxious to these laws in
the particular respect for which they are forbidden in each
case; and, upon the principle stated, all such contracts would
be rendered valid by changing their form and circumstances,
notwithstanding the consideration on which they are founded
was illegal.   But this is in opposition to established doctrine in
such cases; and no reason can be shown why the same princi-
ple is not applicable to contracts founded on a consideration
forbidden by the statute under consideration.   Contracts made
on Sunday are void *because they are made on that day*, which
is prohibited.   It is *the time* of the act done, that vitiates it.
So in smuggling or gaming, and the like, it is not the importation
of goods generally that is rendered illegal, but the importation
in violation of the revenue laws.   In every case, it is the thing
prohibited that renders the contract arising from it illegal,
whether it have reference to time or to anything else.   "When
purged of this ingredient" (the time of making the contract),
says the court, "they are like other contracts."   But in all such
illegal contracts, the rule is that, though the form of it be
changed, yet if it be founded on the same illegal consideration,
it is invalid in any form into which it may be changed.

Several of the cases referred to mention the fact that the

defendant was implicated in the illegal act and the beneficiary of it, as a reason why he should not have the benefit of the defence. But this objection is without legal force. It is thus answered by Lord Mansfield, in *Holman* v. *Johnson:* "It is not for his, the defendant's sake, however, that the objection is ever allowed; but it is founded on principles of public policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff. * * * It is not for the sake of the defendant, but because they will not lend their aid to such a plaintiff, * * * for where both are *equally* in fault, *potior est conditio defendentis.*"

We consider the cases relied on for the appellant rather as injurious judicial refinements, tending to destroy the effect of a statute wisely intended to promote public morals, and to induce the observance of the duties of religion in society, than as founded on sound legal principles; and considering this contract as founded on an illegal consideration, we must apply the well-settled rule of law to it, and hold it to be void.

Let the decree be affirmed.