## Israel L. Pickens *v.* R. M. Eskridge.

1. Illegal contracts: promissory note given for substitute in the army void. — A promissory note given in consideration that the payee would serve as a substitute for the maker in the military forces of the Confederate States, and of the State of Mississippi, in the late war, is a contract contrary to the public policy of the United States, directly in aid of the rebellion, and, therefore, illegal and void.

Error to the Circuit Court of Wayne county. Hon. Wm. Hancock, judge.

R. M. Eskridge sued out, on the 7th day of December, A.D. 1865, attachments against Israel L. Pickens, on the ground that he was about to remove himself out of the State. The causes of action were founded upon three promissory notes made February 17, 1863, and one of which was not due until the first of January, 1866. Pickens appeared and pleaded the general issue; and, secondly, that the notes were given to Eskridge in consideration that he would serve as a substitute for him (Pickens) in the military forces of the Confederate States, and of the State of Mississippi, for three years or the war; and, thirdly, that the notes were given in consideration that Eskridge would serve as a substitute for Pickens in the army of the Confederate States, and in the militia of the State of Mississippi; that he did not serve as such substitute, but hired himself as a substitute for another, and that thereby he (Pickens) was compelled to go into the service himself.

To the second plea Eskridge replied, that by the laws of the Confederate States, and of the State of Mississippi, Pickens was liable to military service, and, at the time of the execution of the promissory note sued on, was actually mustered into the military service of the Confederate States, and contracted with him (Eskridge) to serve as a substitute for him in said service.

To the third plea, Eskridge replied: Performance; that he remained in the military service until captured at Vicksburg, in July, 1863, where he was paroled, and was not exchanged during the war.

To the replications a demurrer was filed, which was over-ruled, and an issue was taken on them. A trial was had before a jury, who returned a verdict in favor of Eskridge for one thousand dollars. Pickens moved for a new trial, which was overruled, and brings the case here by writ of error.

*Fulton Anderson,* for plaintiff in error, contended:

That the contract was illegal, being based on the considera-tion of the employment of Eskridge to commit treason by waging war against the United States. The case of *Green* v. *Sizer,* while it upholds the validity of Confederate money, yet it admits a contract like this would be void.

*S. Evans* for defendant in error.
No brief on file.

SHACKELFORD, C. J., delivered the opinion of the court.

Two attachments were sued out, by the defendant in error, on the 7th day of December, 1865, returnable to the March Term, 1866, of the Wayne Circuit Court.

One of the attachments was founded upon an indebtedness of $1,000, not then due, and the other upon an indebtedness of $1,900, past due.

Declarations were filed at the March Term, 1866, upon three promissory notes, drawn by the plaintiff in error, constituting the indebtedness claimed to be due defendant in error in said attachments.

One declaration was filed upon a note for $1,000, due the 1st January, 1866, and the other upon two notes, one for $900, due 1st January, 1864, and the other for $1,000, due 1st Janu-ary, 1865, all payable to defendant in error on the 17th day of February, 1863.

All of these notes specify the same consideration; viz., "For military service for the next three years, or for the war."

To these declarations, plaintiff in error pleaded the general issue and three special pleas.

The pleas are identically the same in both cases, and are in substance as follows: —

The second plea alleges, that the promissory notes mentioned in the declaration of plaintiff were given to the said plaintiff to serve as a substitute for the said defendant in the State militia of the State of Mississippi, and in the army of the "so-called Confederate States of America," in furtherance of the late war of rebellion against the United States, and are therefore illegal and void, &c.

The third plea states, that the said promissory notes in said plaintiff's declaration mentioned were given by the said defendant to the said plaintiff, on the consideration of a special contract in writing, dated the 17th day of February, A.D. 1863, by which the said plaintiff engaged and bound himself to do all the military service which might be required of the said defendant for the next three years; "meaning that the said plaintiff should serve as a substitute in the military service which might be required of the said defendant in the State militia, and in the military service of the late so-called Confederate States of America, against the United States, in the late war of rebellion," which said written contract was offered as an exhibit, &c.

It is unnecessary to set out the other portions of this plea, for the purposes of this decision.

At the March Term, 1867, the defendant filed replications to the special pleas of plaintiff in error. The first replication is, in substance, that, at the date of the said promissory notes, the "Confederate States of America" were engaged in a war with the "United States of America," and that, by the constitution and laws of the said "Confederate States," and the constitution and laws of the State of Mississippi, the said defendant was liable to, and required to serve in the State militia of the State of Mississippi, which was called into the military service of the said "Confederate States," in defence of the State of Mississippi against the military forces of the United States.

And the said plaintiff averred, that the said defendant being so liable, and required to serve in the militia in the State aforesaid, contracted with and promised to pay to plaintiff the said sums of money in the said promissory notes specified, *" to serve as a substitute "* for the said defendant, in the military service of the said " Confederate States," and the said " State of Mississippi," &c.

The replication to the third plea of plaintiff in error is, in effect, that the consideration of the said promissory notes was for services to be rendered by plaintiff in the military service of the " Confederate States," in the late war between the " Confederate States of America " and the United States of America, and avers, that he did well and truly serve, as such substitute, in the militia, until the surrender of the city of Vicksburg, and the army of the " Confederate States," to the military forces of the United States, on the 4th day of July, 1863.

To these replications the plaintiff in error demurred, and assigned the following cause of demurrer :

" That the same are not sufficient in law; and that they set up the laws of the pretended Confederacy, at war with the United States, as a justification, for the unlawful contract of said parties to aid in carrying on a war against the United States."

This demurrer was overruled by the court, and the cases submitted to a jury, who rendered a verdict for defendant in error.   A motion for a new trial was made and overruled, and exceptions taken to the ruling of the court, in refusing to sustain the motion for a new trial, and hence the cases are brought here by writ of error for revisal.

We shall only consider the first assignment of error, — " That the court erred in overruling the demurrer of plaintiff in error to the replications of the defendant in error."

These replications clearly and fully admit the execution and terms of the contract of the 17th of February, 1863, set out in the special plea of plaintiff in error ; and that the notes sued on, in the case at bar, were given by the plaintiff in error, in consideration of the undertaking of defendant in error to go

into the military service of the State of Mississippi, and of the government of the rebellious States, for three years, or for the duration of the war then being waged between the Insurrectionary States and the United States.

The defendant in error, by his replications, justifies his act in going as a substitute for plaintiff in error into said military service, on the ground that the insurrectionary government of the State of Mississippi, and the pretended government of the rebellious States, had, at the time of the execution of the said contract and notes, the power to compel the plaintiff in error to go into said service, and, being so liable, he could not evade conscription; unless he obtained a substitute, which, by the laws of the pretended government of the insurrectionary States, he was authorized to do; and, consequently, this liability of the plaintiff in error made the contract of the 19th of February, 1863, entered into as aforesaid, legal, and the consideration of the notes given in pursuance of the contract, valid.

We are unable to perceive any force in this position (which was considered by the court below to be correct): to do so would be to admit that the insurrectionary government of Mississippi and that of the rebellious States were legal and valid.

The United States, on no occasion since the attempted secession of the State of Mississippi, or of the other rebellious or insurrectionary States, creating the central government at Richmond, ever renounced their constitutional jurisdiction over either the territory of the rebellious States, or of their citizens in arms against their country, or gave to them the character of *alien* enemies, or to their pretended government the character of a *de facto* government.

These governments, certainly, were without legal authority; and all they had was derived from military force or power. When they were deprived of this power, they ceased to exist.

They could not pass, by their legislature or congress, any act, or law, by which citizens of the rebellious States could be protected from the consequences of their obedience to their conscript law, after the rightful government of the United

States had resumed its authority over the citizens of the States lately in rebellion.

All their laws, hostile to the government of the United States, originated no rights to citizens of these insurrectionary States who obeyed them, which can now be recognized. The Supreme Court of the United States, in the case of *Mauran* v. *Insurance Co.*, p. 13, held, "that these insurrectionary governments of the States, and the central government created by them, with all their acts and proceedings, were illegal and void."

We come now to consider the position of the defendant in error in the transaction in question, as developed by the record.

He was not liable to conscript duty; he was not in the position to be compelled by these insurrectionary governments to violate the laws of the rightful government of the United States, by any law in existence at the date of the contract in question; otherwise he could not have been received as a substitute for the plaintiff in error; therefore, he voluntarily, for a consideration, agreed to violate the laws of his country, and received from the plaintiff in error the notes sued on in this action.

We have shown that the plaintiff in error, *had he* entered the service of the Confederate States, would not have been protected from the consequences, by any act of the central insurrectionary government at Richmond.

It follows, then, that the defendant is without justification for his act of rebellion against the government of the United States; and his voluntary violation of law, in joining the armies of the insurrectionary government, to assist them to prosecute the war of rebellion against the United States, can not originate any rights growing out of said transaction, which can be enforced either in a court of law or equity. With the fall of the rebellion, his remedy against the plaintiff in error, on his notes, ceased.

He can not now be permitted to evade the consequences of his illegal act.

We are, therefore, of the opinion that the contract of the 17th day of February, 1863, referred to in the pleas of plaintiff in error, and admitted to be correctly set out by the replications of defendant, comes fully within the rule laid down in the case of *Toller* v. *Armstrong*, 11 Wheaton S. C. Rep. p. 258; and *Kennett* v. *Chambers*, 14 Howard S. C. Rep. p. 38, — "that where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it." This rule has been repeatedly held, and recognized by this court, in the cases of *Wooten* v. *Miller*, 7 S. & M.; *Kountz* v. *Price & Dixon*, 40 Miss. 341; *Green* v. *Sizer*, 40 Miss.; and *Frazer* v. *Robinson & Daniel*, M. O., and other cases cited in these opinions.

The contract, in the case at bar, bound the defendant in error to do an act, *malum prohibitum*, which, by the laws then in force, enacted by the Congress of the United States during the rebellion, rendered him liable to the pains and penalties of treason.

The notes sued on in the cases before us, having been given as the consideration of this illegal act of defendant in error, and growing immediately out of the illegal contract of the 17th of February, 1863, aforesaid, are absolutely null and void.

We therefore believe, for these reasons, that the court below erred in overruling the demurrer of plaintiff in error to the replications of defendant in error to the second and third pleas of plaintiff in error. The judgment, in both cases, must be reversed; and the court now proceeding to render the judgment the court below should have rendered on the demurrer, order and adjudge the demurrer to be sustained to the second and third replications, and that judgment be rendered here for the plaintiff in error in both cases.