## SMITH, DABNEY & CO ET AL. *vs.* ARMISTEAD.

1. Under the 41st rule of practice in the courts of the United States in causes of admiralty and maritime jurisdiction on the instance side of the court, the marshal in the sale of property condemned acts immediately under the decree and order of the court.

Error to the Circuit Court of Greene. Tried before the Hon. John D. Phelan.

J. B. CLARKE, for the plaintiffs:

1. By demurring to the declaration the defendant denied that

Smith, Dabney & Co. et al. v. Armistead.

it was his duty on the rendition of the decrees to take the vessel into¦ his possession, but admits thereby the fact that as marshal he did so. Here then is an admission that the taking was by color of office.

2. It is insisted on behalf of the plaintiffs, that whenever a decree of condemnation and sale is rendered in admiralty, that no process is necessary to authorise the marshal to proceed to seize and sell the condemned property.—42d rule Admiralty Practice, *vide* front part of 3 Howard's U. S. Rep.

3. But should it be decided that the 42d rule does not give the power, then it is contended that under the 46th the District Court was to regulate its own practice, and that what that practice was became a matter of evidence.

4. The seizure is admitted by the demurrer to have been under color of office. The defendant therefore cannot be allowed to say that when he made it he had no authority.

5. The plaintiffs do not complain of the immediate injury, but of the consequential damage; this they have a right to do. They have a right to waive the force.—1 Chit. P. 139.

ERWIN, for the defendant:

1. The practice of the Circuit and District Courts of the United States, though differing very much, is every where, in a great degree, assimilated to the practice of the various State courts, where district courts are established.—Dunlap's Ad. Prac. 141.

2. Seizures under process from the District Courts of the United States, in admiralty cases, are conducted very much in the same manner that they are under process of attachment from the State courts, and execution issues conformably to the State practice.—Dunlap's Ad. Practice, 138.

3. The Admiralty Courts may in the exercise of a sound discretion deliver the property libeled, or arrested in a civil cause of admiralty jurisdiction, upon *bail*, or security for its value.— Dunlap's Ad. Practice, 174.

4. As to the delivery of property on *bail*, rendering judgment and issuing execution—see Dunlap's Ad. Practice, 181 —the whole paragraph commencing "A Court of Admiralty." See, also, as to the issuing of executions, 184-186-187-190, when an appeal is taken from the Vice-Admiralty Court in

England; Ib. 306, as to practice in the *first* circuit of the U. S.

5. As to the manner of decreeing and conducting sale where no bail has been given.—Dunlap's Ad. Prac. 298.

6. In all proceedings *in rem*, execution issues immediately of course against all the parties to the stipulation.—Dunlap's Ad. Prac. 301-'2—before cited—as the rule in the *first* circuit.

7. The usual course in admiralty causes in the United States is to issue a *venditioni exponas*.—See Boston ed. of Conklin's Prac.—title, Final Process.

8. The third section of the act of Congress of the 19th May, 1828, directs that writs of execution issued on judgment in any courts of the United States and the proceedings thereon shall be the same except their style in each State respectively, as are *now* used in the courts of such State : *Provided, however,* that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter final process in said courts as to conform the same to any change which may be adopted by the legislatures of the several States for the State courts.—See Conklin's Prac. 315-316; Laws of U. S.

PARSONS, J.—The plaintiffs in error brought an action on the case in the Circuit Court of Greene, against the defendant as the Marshal of the Southern District of Alabama. There are several counts in the declaration, to each of which there was a demurrer, and the demurrers were sustained. The plaintiffs have assigned this as error, and they contend by their counsel that the demurrers should have been overruled.

The first count alleges that the plaintiffs were the owners of the steam schooner Lion, with her engine, tackle, apparel and furniture. It then states that one Beardslee, on the 28th day of June 1845, filed his libel in the District Court of the United States for the Southern District of Alabama, sitting in Admiralty, against the said schooner, her enigne, &c., the object of which was to recover for materials furnished and repairs done to and for the schooner : That process accordingly issued, under which the defendant, as marshal, seized the schooner, &c. which were bailed by persons mentioned, who entered into bond with a condition that they should have the schooner, &c. forthcoming to abide the decree to be made in the libel suit. This count further shows that thereupon a writ of restitution was is-

sued, under which the defendant restored the vessel, &c. to her owners; and that the said court afterwards, on the 16th day of July 1845, in the same suit, decreed that the said schooner, &c. be condemned as forfeited to the libelant, and that the marshal, after giving three days' notice thereof in two newspapers published in the city of Mobile, expose to sale, and sell for cash to the highest bidder, in front of the United States' court-room in Mobile, the said steam schooner, &c., and after deducting the charges and expenses of the sale, to pay the proceeds into court for distribution, &c. &c. That thereupon the defendant, as marshal, &c. in pursuance of the decree, took possession of said schooner, &c. with an allegation that he negligently permitted the vessel, &c. to be consumed by fire, to the damage of the plaintiffs, &c. The defendant's counsel now contends that this count is defective, because it does not allege that the marshal, in the last instance, took possession of the schooner, her tackle, &c. under any process, and that for this reason the count shows that he was a trespasser, and that of course an action on the case cannot be sustained. If it be conceded to the fullest extent that the marshal could not execute such a decree, according to the admiralty practice heretofore, without process from the decree, the question immediately arises if he might not do so under the 41st rule of practice of the courts of the United States, in causes of admiralty and maritime jurisdiction, on the instance side of the court, adopted in pursuance of the act of Congress of the 23d of August 1842? The rule is as follows: "All sales of property under any decree in admiralty shall be made by the marshal or his deputy or other proper officer assigned by the court, when the marshal is a party in interest, in pursuance of the orders of the court; and the proceeds thereof, when sold, shall be forthwith paid into the registry of the court by the officer making the sale, to be disposed of by the court according to law." The rules will be found in the first part of 3 Howard's U. S. Reports. According to our construction of this rule, the marshal is to act, in such cases, immediately under the decree and order of the court. When an estate or other property is directed to be sold by a court of chancery, the person who makes the sale acts under the order as his authority, and we do not doubt but the rule was prescribed in view of that practice, and we think the demurrer to the first count should

have been overruled; and as the same question arises upon all the counts, each of the demurrers should have been overruled. Let the judgment be reversed and the cause remanded.