## TUCKER VS. WEST et al.

1. CONTRACT: *Malum prohibitum.*

   Contracts founded on an act prohibited by statute, under a penalty, are void.

2. SUNDAY CONTRACTS: *At common law and by statute.*

   There was at common law no distinction between Sunday and any other day, as to the making of contracts, and all other acts not of a judicial nature; but under our statute, a contract executed on Sunday is void.

3. — *The original contract not affected by taking a note on Sunday.*

   Where a contract for the sale of land is made on a week day, and a note for the purchase money executed on Sunday, the vendor may recover the purchase money, notwithstanding the invalidity of the note.

4. PRACTICE: *Verdict on one of several defenses.*

   If several defenses are interposed, and verdict for the defendant on one that goes to the whole action, it is not material to dispose of the other issues.

5. RATIFICATION: *Of a contract based upon an illegal consideration.*

   Where the consideration of a contract is either wicked in itself, or prohibited by law, it is void and incapable of ratification.

6. — *Of Sunday contracts.*

   A note executed on Sunday may be ratified by an express promise made on a week day to pay it.

Tucker vs. West et al.

**7. PLEADING:** *Replication of new promise.*
To a plea that a note was executed on Sunday, a new promise need not be replied under the Code practice, but may be proven.

**8. EVIDENCE:** *Admissibility of.*
Evidence tending to prove a circumstance bearing on a material fact in issue should be admitted.

APPEAL from *Washington* Circuit Court.

Hon. E. D. HAM, Circuit Judge.

*J. D. Walker* and *Garland,* for appellants.

*U. M. Rose, contra.*

ENGLISH, C. J. Pleasant B. Tucker, as administrator of Edw. M. Crawford, deceased, sued Robert J. West and John Mock, in the Washington circuit court, on an instrument alleged in the amended complaint to be a writing obligatory for $2,267, bearing date about the 15th of April, 1861, payable, one day after date, to plaintiff's intestate, with ten per cent. interest, etc., and in the possession of defendants.

The record is in some confusion as to the answer of the defendants, but it seems to have contained seven paragraphs, to all of which but three (the 5th, 6th and 7th), a demurrer was sustained.

The 5th was, in substance, that the instrument sued on was made, signed, executed and delivered on Sunday, the 14th day of April, 1861, contrary to the first section of the fifth article of the 51st chapter of the Digest (Gould's) of the statutes of the state of Arkansas, title, Sabbath Breaking.

6th. Payment. 7th. *Non est factum.*

The issues thus formed were submitted to a jury. The evidence introduced on the trial is conflicting. It seems that in the summer of 1860, Crawford sold to West some land, on which there was a balance of purchase money due. The obligation sued on was executed, according to the testimony of

several witnesses, at a house where Crawford and West were both living, on Sunday, April 14, 1861, for the balance of purchase money. Crawford wrote the note, and West and Mock signed it. It was dated back to the 13th of April. The testimony of some of the witnesses conduced to prove that Mock did not sign the note until Monday, on which day Crawford left for Oregon. There was also evidence conducing to prove that Crawford left the note with Tucker (who, after his death, became his administrator) for collection; and that in 1862 the note was taken out of Tucker's hands by a confederate provost marshal, as the property of an alien enemy, to whom West paid it in confederate money, and the note was delivered to him.

Among other instructions, the court charged the jury against the objection of plaintiff: "3d. That if they found from the evidence that the instrument sued on was made, executed and delivered to said E. M. Crawford, by the defendants, on Sunday, they should find for the defendants," etc.

The jury returned a special verdict, as follows: "We, the jury, find that the instrument sued on was made, executed and delivered by the defendants on Sunday."

Upon this verdict the court rendered judgment discharging the defendants; the plaintiff moved for a new trial on numerous grounds, which was overruled, and he excepted and appealed.

I. Was the note sued on void because executed on Sunday?

It is a settled principle of the common law that all contracts which are founded on an act prohibited by a statute under a penalty are void, although not expressly declared to be so. *O'Donnell et al. v. Sweeney,* 5 Ala., 468; 1 Taunt., 135.

By the common law, no judicial act could be done on Sunday. We have statutes making exceptions.

But as to the making of contracts, and all other acts not of

a judicial nature, the common law made no distinction be-tween Sunday and any other day. 2 Parsons on Con., 757, notes, and cases cited. *Drury v. Defontaine*, 1 Taunt., 131.

By statute, 29 Chas. II, it was enacted that "no tradesman, artificer, or other person whatsoever, should do or exercise any worldly labor, business or work of their ordinary callings upon the Lord's day, or any part thereof (work of necessity and charity only excepted); and that every person of the age of fourteen years, offending in the premises, should forfeit five shillings."

Contracts made in violation of this statute were held by the English courts to be void. Chitty on Con., 374, and cases cited. But where a man kept a commission stable for the sale of horses by auction, it was held that a private sale made by him on Sunday was not void under the statute, be-cause the sale was not in the exercise of his ordinary calling; though Lord MANSFIELD said it was a very indecent thing to sell a horse on Sunday, and a thing that no religious man would do. *Drury v. Fontaine*, 1 Taunt., 135.

In this country, Sunday laws, or "laws for the better ob-servance of the Lord's day," as they were generally called, were passed in most of the colonies, and are now in force in most of the states; and contracts in violation of them have been held void, the decisions varying according to the peculiar expressions of the different statutes. 2 Parsons Con., 757–760, and notes.

Our statute is as follows: "Every person who shall, on the Sabbath or Sunday, be found laboring, or shall compel his apprentice or servant to labor or to perform other services than customary household duties of daily necessity, comfort or charity, on conviction thereof, shall be fined one dollar for each separate offense.

"The provisions of this act shall not apply to steamboats and

other vessels navigating the waters of the state, nor to such manufacturing establishments as require to be kept in continual operation.

" Persons who are members of any religious society who observe as Sabbath any other day of the week than the Christian Sabbath or Sunday, shall not be subject to the penalties of this act, so that they observe one day in seven, agreeably to the faith and practice of their church or society.

" Every person who shall, on Sunday, keep open any store, or retail any goods, wares, or merchandise, or keep open any dram shop or grocery, or sell or retail any spirits or wine, shall on conviction thereof, be fined in any sum not less than ten dollars nor more than twenty.

" Charity or necessity may be shown in justification of the violation of the last preceding section.

" Horse racing, gaming, hunting with a gun to kill game, or shooting for amusement on the Sabbath, are also prohibited and punished." Gantt's Dig., ch. 42, pp. 382–3.

*In Alabama.* " Worldly business or employment, ordinary or servile work (works of necessity or charity excepted)," on Sunday, is prohibited, under a penalty.

*O'Donnell et al. v. Sweeney,* 5 Ala., 468, was a suit on a note executed on Sunday for a horse sold on that day, and the note was held invalid. The court said: " To constitute an offense against 29 Chas. II, one of the parties to the contract, at least, must be engaged in his ' ordinary calling;' not so under our law, which prohibits all worldly business or employment, or ordinary or servile work, ' works of necessity or charity only excepted.' The term ' ordinary,' in our statute, is equivalent to common or usual work or employment, and beyond all doubt embraces within its ample range the sale of a horse, or any other chattel, whether the sale be public or private; whether the parties engaged in it, or either of them, were in the prose-

cution of their ordinary employment or not. It is 'worldly business or employment,' and it falls within the letter, as well as within the mischief of the statute."

In *Saltmarsh v. Tuthill*, 13 Ala., 390, *held*, that the indorsement of a bill on Sunday, drawn in substitution of one previously given, was void under the Sabbath act. Here there was no sale, but the mere indorsement of the bill on Sunday.

In *Hussey v. Roquemore*, 17 Ala., 282, *held*, that a promise made on Sunday to pay the balance due on a note, against which the promisor had a valid defense, was void and of no effect, under the Sabbath act.

In *Dodson et al. v. Harris et al.*, 10 Ala., 566, *held*, that where a horse is sold on Sunday, and a note taken for the purchase money on the same day, both the contract and note are void, and though the purchaser retain the horse in his possession, without objection or demand by the seller, the law will not imply a promise to pay the stipulated price, or what the horse is reasonably worth. Such a contract being void, no property passed to the vendee, and he would be chargeable in trover upon proof of demand and refusal, or in assumpsit upon an express promise to pay, subsequently made, in consideration of the retention of the horse.

In *Hooper v. Edwards*, 18 Ala., 283, the court said the act was passed to prevent vice and immorality, and the desecration of the Sabbath to common secular business, but where a debtor was availing himself of the Sabbath to run his property off, and avoid the payment of his debts, and a creditor pursued him and took a bill of sale of property on Sunday to secure his debt, held that the contract was valid as a work of necessity.

*In Connecticut.* "No person shall do any secular business, work or labor, works of necessity and mercy excepted, nor keep open any shops, etc., on the Lord's day."

In *Wight v. Geer*, 1 Root, 474, *held*, that a note executed on Sunday was void. See also *Northrup v. Foot*, 14 Wend., 248, where it was held that a contract for the sale of a horse, made on Sunday, in Connecticut, was void under the laws of that state. And in *Cameron v. Peck*, 38 Conn., 557, the court. said : " Our statute no doubt makes void all contracts entered into on Sunday, and we should not knowingly give counte- nance to an opposite doctrine." *Held*, in *Finn v. Donahue*,. 35 Conn., 216, that assumpsit would not lie to recover money loaned on the Sabbath. In *Beardsley v. Hall*, 36 Conn., 276,. the court said that part payment on Sunday, of a debt barred by limitation, might not remove the bar, but it was competent. to prove that the debtor admitted on the Sabbath that at some previous time he had made a payment on the debt. Justice Park said : " We think the mere telling of the truth upon the Sabbath day, in relation to a matter like this, is not transact- ing secular business within the meaning of the Sabbath act."

*In Indiana*, " If any person shall be found on the first day of the week, commonly called Sunday, rioting, hunting, fishing, quarreling, or at common labor, works of necessity and charity only excepted, he shall be fined," etc.

In *Link v. Clemens*, 7 Blackf., 479, Clemens, assignee of the sheriff, sued Link and others on a replevin bond. Plea, that. the bond was signed, sealed and delivered on Sunday, and therefore void. Demurrer sustained to the plea, and on error, the supreme court held that the executing of the bond was common labor within the meaning of the statute, and that the plea was good, and the bond bad.

In *Reynolds, use etc. v. Stevenson*, 4 Ind., 619, the suit was on a note. Plea, that the note was made, executed and delivered on Sunday ; demurrer to the plea overruled, and on error, the court said : "It is admitted that the note in question was made on Sunday. Then the record presents this question :

Did the making of it constitute an act of 'common labor?' We think the statute intended to prohibit every description of secular business not within the exceptions pointed out by itself. The executing of this note was secular business, and not embraced by the exceptions. This view is sustained by various adjudications made upon statutes, the provisions of which are, in effect, the same as ours. *Allen v. Deming*, 14 N. H., 133 ; *Towle v. Larrabee*, 26 Me., 464 ; *Adams v. Hamel*, 2 Doug. (Mich.), 73. In *Link v. Clemens*, 7 Blackf., 479, it was held that a replevin bond executed on Sunday was void. This authority is decisive of the case before us. The note was no doubt made in violation of the statute ; therefore it must be considered a nullity."

In *Hannun v. Curtis*, 13 Ind., 205, a sale of goods was talked of between the parties on Saturday, and the terms of sale agreed on and the property delivered on Sunday. *Held*, that the contract of sale was void ; but the purchaser kept the goods, sold part of them subsequently, and delivered the proceeds to the seller, and this was held to be a ratification of the contract of sale.

*In Kentucky.* "If any person, on the Sabbath day, shall himself be found laboring at his own or any other trade or calling, or shall employ his apprentices, servants, etc., in labor or other business, whether for profit or amusement, unless expressly permitted by this act (and no work or business shall be done on the Sabbath day, unless the ordinary household offices of daily necessity, or other work of necessity or charity), he shall forfeit the sum of ten shillings for every offense," etc. A young stallion was castrated on Sunday, and warranted to recover from the operation. In a suit on the warranty, *held*, that the contract was void under this statute. *Slade v. Arnold*, 14 B. Mon., 287. In *Murphy v. Simpson*, id., 419, *held*, that the statute applied to every description of secular labor or

business, except ordinary household offices of daily necessity, or other work of necessity or charity; and that where the parties swapped horses on Sunday, a warranty of soundness was void, and an action could not be maintained upon it. But where a note which had been previously prepared was signed on Sunday, but there was no evidence that it was delivered to the payee on that day, or that he participated in any violation of the statute prohibiting labor and business on the Sabbath, the validity of the note was held not to be affected in his hands. *Dohoney et al. v. Dohoney*, 7 Bush., 217; *Ray, etc., v. Catlett et al.*, 12 B. Mon., 532.

*In Maine.* "No person shall keep open his shop, warehouse or workhouse, nor shall upon land or water, do any manner of labor, business or work, works of necessity and charity only excepted, on the Lord's day, or any part thereof, upon penalty not exceeding six dollars and sixty cents," etc. A note made on Sunday for the price of a horse sold on that day, held to be void, the act being violation of this statute. *Towle v. Larrabee*, 26 Me., 464. So an appeal recognizance taken on the Lord's day, being mere matter of contract, is void under the statute. *State v. Suheer*, 33 Me., 539. The Lord's day in Maine is from the preceding midnight to sundown on Sunday. A bond executed on Sunday is void, if it be shown that it was made before sundown. *Nason v. Dinsmore et al.*, 34 Me., 390. A note signed and delivered on the Lord's day is void, but where the note was signed on Sunday, in the absence of the payee, and delivered to him on a work day, it was valid in his hands. *Hilton v. Houghton et al.*, 35 Me., 143. All contracts made in violation of the statute are illegal and void. *Parker v. Latney*, 60 id., 528, and cases cited; *Pope v. Linn*, 50 id., 83.

*In Massachusetts.* "No person shall do any manner of labor, business or work, except only works of necessity and

charity, on the Lord's day," etc. The execution of a bond on the Lord's day, held to be a violation of this statute, and the bond illegal and void. *Pattee v. Greely*, 13 Met., 284. The court said: "The legislature intended to prohibit secular business on the Lord's day, and did not confine the prohibition to manual labor, but extended it to the making of bargains and all kinds of trafficking." The court also quoted the remarks of Lord ALVANLY, in *Morch v. Abel*, 3 Bos. & Pul., 83, that "no man can come into a British court of justice to seek the assistance of the law, who founds his claim upon a contravention of the British laws." This case is regarded as overruling *Geer v. Putman*, 10 Mass., 312, where the defense that a note was executed on Lord's day was not allowed. 2 Pars. Con., 759, note (q).

*In Michigan.* "No person shall keep open his shop, warehouse or workhouse, or shall do any manner of labor, business or work, except work of necessity or charity, on the first day of the week, and every person so offending shall be punished by fine not exceeding ten dollars for each offense." Two persons swapped horses on Sunday, and one of them gave a note for the agreed difference in the value of the horses; *held*, that the note was given in violation of the statute, and therefore void. *Adams v. Hamell*, 2 Doug., 73. So in *Tucker v. Mowry*, 12 Mich., 378, a horse was sold, and paid for on Sunday, and on a subsequent day the sellers tendered back the purchase price, and brought replevin for the horse; *held*, that the sale was illegal, null and void, and the sellers could recover the horse if not restored on demand.

*In Minnesota.* "No person shall keep open his shop, warehouse or workhouse, or shall do any manner of labor, business or work, except only works of necessity and charity, * * * on the Lord's day, commonly called Sunday, and every person so offending shall be punished by fine," etc. *Held*,

that a demand made on Sunday for the delivery of wheat, which one person had previously agreed to deliver to another, was in violation of the statute, and null and void. *Bracket v. Edgerton*, 14 Minn., 190.

*In Mississippi.* "No merchant, shopkeeper or other person, except apothecaries and druggists, shall keep open store, or dispose of any wares or merchandise, goods or chattels on Sunday, or sell or barter the same," upon penalty therein prescribed. There was an agreement made on Sunday to exchange salt for cotton; the salt was delivered on that day, but the cotton was not, and on a subsequent work day a note was given for the cotton. *Held*, that the original contract was in violation of the Sabbath act, illegal null and void, and that the note made in furtherance of it was also void. *Kountz v. Price*, 40 Miss., 341. But the note made on a work day, though growing out of a Sunday contract, was, by the current of authorities, valid.

*In Missouri*, the statute makes it a misdemeanor for a person to labor himself, or compel or permit his apprentice, servant, or any other person under his control, to labor or perform any work, other than those of necessity or charity, on the first day of the week, commonly called Sunday. In *Kaufman v. Hamru*, 30 Mo., 387, groceries were sold on a work day, but a note for the price, executed and delivered by the purchaser to the agent of the plaintiff on Sunday, dated back to Saturday. Defense, that the note was made on Sunday. The court, in a short opinion, said that the object of the statute would not be promoted by allowing this defense, citing *Geer v. Putman*, 10 Mass., 312; (which was in effect overruled in *Pattee v. Greely*, 13 Met., 284; 2 Par. on Con., 759, note q).

*In New Hampshire*, by act of December 24, 1799, "No person whatsoever shall do or exercise any labor, business or work of his secular calling, works of necessity or mercy only

Tucker vs. West et al.

excepted, on the Lord's day, under a penalty of six dollars."
In *Allen v. Deming*, 14 N. H., 133, the defendant bought
shingles on Sunday, and gave a note to the seller for part of
the price. He permitted the shingles to remain with the
seller for about a month, and then took them away. *Held*,
that the contract was complete on Sunday, and the note void,
(disapproving *Geer v. Putman*, 10 Mass., 312).

Afterwards, the revised statutes so far altered the law, that
it prohibited the transaction of secular business on the Lord's
day, only when it was done to the disturbance of others. A
note was executed on Sunday, for a mare, at the house of the
plaintiff, and in the presence of his wife, who was reading a
newspaper, and a witness who went there with defendant.
*Held*, that the giving of the note was business of a secular
calling, tending, under the circumstances, to the disturbance
of others, within the meaning of the revised statute, and that
no action could be maintained on the note. *Varney v. French*,
19 N. H., 231.

*In New Jersey.* "Worldly employment or business" pro-
hibited, and a note made on Sunday is void. *Reeves v. Butcher*,
31 N. J., 224. So a sale of land. *Ryno v. Darby*, 5 Green,
232.

*In New York.* "There shall be no servile labor, or work-
ing on Sunday, excepting works of necessity and charity,"
etc. And "No person shall expose to sale any wares, mer-
chandise, fruit, herbs, goods or chattels on Sunday, except
meats, milk and fish, which may be sold at any time before
nine o'clock in the morning." In *Watts v. Van Ness*, 1 Hill,
76, it was held, that a covenant to perform service on Sunday
as an attorney's clerk was void, and no compensation could
be recovered. A special justice of the city of New York,
receiving an annual salary, could not recover extra compen-
sation for services performed on Sunday. *Palmer v. City of*

*New York*, 2 Sandf., 318. A contract to publish an advertisement in a newspaper, issued on Sunday; *held*, unlawful and void, as involving a violation of both provisions of the statute. *Smith v. Wilcox*, 19 Barb., 581; same case, 24 N. Y., 353. In *Boynton v. Page*, 13 Wend., 439, *held*, that the second clause of the statute, as above copied, was intended to prohibit the public exposure of commodities to sale, and that a private transfer of goods was not within the prohibition. It was a private verbal agreement made between the parties in Canada to transfer goods in New York.

*In Ohio.* "If any person of the age of fourteen years or upwards shall be found on the first day of the week, commonly called Sunday, sporting, rioting, quarreling, hunting, fishing, shooting, or at common labor (works of necessity and charity only excepted), he shall be fined," etc. In *City of Cincinnati v. Rice*, 15 Ohio, 225, *held*, that the words "common labor" in this act embrace the business of "trading, bartering, selling or buying any goods, wares or merchandise." A sale of four hundred bushels of corn on Sunday, *held*, to be within the prohibition of common labor, and that an action for breach of the contract could not be maintained. *Sellers v. Dugan*, 18 Ohio, 489. But, on the contrary, *held*, in *Bloom v. Richards*, 2 Ohio St., 387, that a sale of land on Sunday, a single transaction, involving, in the opinion of the court, no labor, was not prohibited by the statute.

*In Oregon*, secular labor or business on Sunday is prohibited, and a note made on Sunday is void. *Smith v. Case*, 2 Oregon, 191.

*In Pennsylvania.* "If any person shall do or perform any worldly employment or business on the Lord's day, commonly called Sunday, works of necessity and charity only excepted," etc. A bond or note executed on Sunday for property previously sold, held illegal and void. *Kepner v. Keefer*, 6 Watts,

231. *Fox v. Mensch*, 3 Watts & Serg., 444. So a contract made on Sunday for the hire of horses to be used on an excur-. sion of pleasure, on that or any other day, is void. *Berrill v. Smith*, 2 Miles, 402. A bond signed on Sunday, but delivered on Monday, is not void, because not complete until delivered. *Commonwealth v. Kendig*, 2 Penn. St., 448.

*In Rhode Island*, the letting of a horse on Sunday by a livery stable keeper, in the ordinary course of his calling, when uncalled for by necessity or charity, is an illegal and void contract. *Whelden v. Chappel*, 8 R. I., 230.

*In Tennessee*, all persons are prohibited, as by the English statute, from exercising any labor, business or work of their ordinary callings, and an act to be illegal and void, under the statute, must be done in the ordinary calling, etc. . *Amis v. Kyle*, 2 Yerg., 31.

*In Vermont.* Sunday "shall be observed as a day of rest from secular labor and employment, except such as necessity and acts of charity shall require." An ordinary exchange of horses on Sunday is secular labor or employment within the meaning of the statute, and an action cannot be maintained on such contract for breach of warranty. *Lyon v. Strong*, 6 Vt., 219. So a promissory note executed on Sunday, in consummation of a contract previously made, is void ; but though written and signed on Sunday, if not delivered until some other day, it is valid. *Lovejoy v. Whipple*, 18 Vt., 379. Able review of cases by REDFIELD, J. See also *Adams v. Gay*, 19 Vt., 358.

*In Wisconsin*, a sale or note made on Sunday is void. *Moore v. Kendall*, 1 Chand., 33 ; *Hill v. Sherwood*, 3 Wis., 345.

One great object of all the American statutes, though varying in their expressions, is to prevent the desecration of the Sabbath by the doing of ordinary work or secular business.

But aside from any religious considerations, the statutes are

founded in good public policy. Rest one day in seven from labor and secular employments, whether merely manual or mental, is beneficial to body and mind, and a necessity for men as well as animals employed to labor for them. Hence every man must keep one day, but if he be no Christian, he may keep the Sabbath of his own faith.

If our statute were strictly construed as a penal statute, the execution of a note or bond on Sunday could not be considered as embraced in the prohibition against "laboring" on the Sabbath. But acts regulating the observance of the Sabbath have been held to be remedial statutes, and to be construed liberally in respect to the mischiefs to be remedied. *Smith v. Wilcox,* 24 N. Y., 354; *Northrup v. Foot,* 14 Wend., 249; *Fennell et al. v. Ridler,* 5 Barn. & Cres., 406; *Smith v. Sparrow,* 4 Bing., 84.

A narrow and literal construction of our statute would leave open a wide door for the desecration of the Sabbath. If ordinary manual labor only is prohibited, a man may not plow, sow, reap, dig, or chop on Sunday, but he may sell his lands, stock and crops, execute deeds, bills of sale, warranties, and take notes, on Sunday.

So a man may not keep open his store, or retail goods, wares or merchandise, but he can let in a customer, and, with the door shut, lump off his whole stock, and take notes for it on Sunday.

So a lawyer may spend the Sabbath in giving advice to his clients, and taking their notes therefor.

These are but examples of numerous instances in which the Sabbath could be desecrated with impunity, if the words of the statute were narrowly construed.

If a man may, without any violation of the law, execute one note, bond, deed or bill on Sunday, he may execute any number.

Tucker vs. West et al.

But it is insisted in this case, that inasmuch as the land was sold on a week day, it was no violation of the statute to execute the note for the purchase money on Sunday. If this be so, a man may sell lands or goods all the week, and devote the Sabbath to taking notes, etc.

The parties in this case knew they were doing wrong in executing the note on Sunday, as indicated by their dating it back to Saturday.

We think we are warranted by the great current of decisions, in holding that the execution of the note on Sunday was a violation of the spirit and intention of the statute, and that the note was therefore illegal and void. But the land having been sold on a work day, Crawford did not lose the purchase money by taking an illegal and worthless note. He or his administrator could have brought an action for the balance of the unpaid purchase money, or filed a bill to enforce a vendor's lien.

II. It is objected for the appellant, that the verdict left the issues upon the pleas or paragraphs of payment and *non est factum* undisposed of.

Had the verdict been against the defendants below, on the Sunday issue, and left the two other issues undisposed of, it would have been bad; but the verdict being in favor of the defendants, and against the plaintiff, on a defense that went to the whole action, it was not material to dispose of the other issues. *O'Brien v. Hilburn*, 22 Tex., 617; *State Bank v. Cason et al.*, 10 Ark., 479; *Quisenberry v. Quisenberry*, 14 B. Mon., 481. Had the jury found in favor of the plaintiff, on the defense of payment and [non est factum*, the verdict being against him on the other defense in bar, judgment must have gone for the defendants.

III. It is also objected that the jury did not find that Crawford knew that the note was executed on Sunday — in

other words, that he was *in pari delicto* with the makers of the note, or participated in the violation of the statute.

The plea in effect was, that the instrument sued on was made, signed, executed and delivered by the defendants to Crawford, on Sunday; and the jury in their special verdict, found the material facts alleged in the plea. Six witnesses swore that they were present when the note was executed. Three of them swore that Crawford wrote it, and all of them that it was signed by West and Mock, and delivered to Crawford at the time, which was on Sunday. So, according to the testimony of these witnesses, the note was not only signed and delivered on Sunday, but Crawford participated in its execution by writing it, and accepting it after it was signed in his presence.

One of the witnesses stated that Crawford and West made a settlement, and then the note was given for the balance due on the land.

They were living in different rooms of the same house.

With such proof before us of the participation of Crawford in the violation of the statute, we are not disposed to favor technical objections to the form of the verdict.

A female witness, who was present when the note was executed, stated that the parties were all members of the church, and that she knew that they were doing wrong at the time. She perhaps knew nothing of the statute, but was no doubt familiar with the ten commandments.

IV. On the trial, after the defendants had proven by their witness that the instrument sued on was executed and delivered on Sunday, and closed, the plaintiff, for the purpose of showing an affirmance and ratification of the instrument by West, offered to prove by Pleasant B. Tucker, that after the note was placed in his hands for collection by Crawford, and about a week after its execution, he called on West, on a

week day, and informed him that he was the agent of Craw-
ford, and as such had the note for collection; and that West,
on being so informed, then promised him to pay the note, and
expressly stated that he would pay it; and on the objection
·of the defendants, the court refused to permit such facts to be
proven.

The plaintiff also offered to prove by William Morton, that
on Monday, the 15th of April, 1861, and after the note had
been executed and delivered to Crawford, West promised
Crawford to pay him the note; which was also ruled out by
the court. Mr. Parson says, whether a contract entered into
on Sunday will be rendered valid by a subsequent recogni-
tion is not clear upon authorities. 2 Par. on Con., 764.

It is doubtless a general rule that where the consideration
of a contract is either wicked in itself, or prohibited by law,
it is void and incapable of ratification. *Armstrong v. Toler*, 11
Wheat., 258; 2 Kent Com., 466; Chitty on Cont., 674; *Cop-
pell v. Hall*, 7 Wall., 558.

And there are cases in which this rule has been applied to
contracts made in violation of Sunday laws. *Bradley v. Rea*,
103 Mass., 191; *Byno v. Darby*, 20 N. J. (5 Green), 233;
*Reeves v. Butcher*, 31 N. J. (2 Vroom), 225 ; *Pope v. Linn*, 50
Me., 83 ; *Finn v. Donahue*, 35 Conn., 216.

But in the case before us the consideration of the contract
was neither wicked, immoral nor illegal. The note was given
by West to Crawford for balance of purchase money due on
a previous sale of land. The note was merely illegal as to the
time, the day on which it was executed. It was not immoral
or illegal in a civil sense, to make the note on Sunday, for
by the common law, a contract made on Sunday was valid.
The note, not the consideration, was illegal, because the stat-
ute forbids its execution on Sunday. Had it been written and
signed on Sunday merely, but not delivered to Crawford until

Monday, it would have been valid in his hands, as we have seen from cases above cited. Had it been for a wicked or illegal consideration, or act, or service, no matter when written, signed or delivered, the note would have been void, and incapable of ratification.

If Crawford had sold the land to West on Sunday, the sale would have been void, and neither party could have enforced it in the courts. But if on Monday, West had paid him the purchase money, why should that not be an affirmance of the sale?

In *Adams v. Gay*, 19 Vt., 360, Judge REDFIELD, in a well considered opinion, took the distinction above indicated. He said: " We think contracts made on Sunday should be held an exception, in some sense, from the general class of contracts which are void for illegality. Such contracts are not tainted with any general illegality; they are illegal only as to the time in which they are entered into. When purged of this ingredient they are like other contracts. Contracts of this kind are not void because they have grown out of a transaction on Sunday. This is not sufficient to avoid them; they must be finally closed upon that day. And although closed upon that day, yet if affirmed upon a subsequent day, they then become valid. *Williams v. Paul*, 6 Bing., 653. The same principle is distinctly recognized also in *Bloxsome v. Williams*, 3 Barn. & Cress., 231. And if it is competent to affirm a contract of this kind upon some other day, it follows there must be a very essential difference between such contracts and most other illegal contracts, which can never be so affirmed as to bind the parties."

In the case from which we have quoted, the plaintiff and defendant exchanged horses on Sunday, and the defendant was guilty of fraud and misrepresentation. On a subsequent week day the plaintiff requested the defendant to reëxchange,

which he declined doing; he refused to take back his own horse and surrender the plaintiff's, and the plaintiff sued him for deceit and false warranty, and it was held that the refusal of the defendant on a work day to reëxchange horses was an affirmance of the Sunday contract.

This case has been followed in others. In *Sargeant v. Butts*, 21 Vt., 99, where an award was made on Sunday, and the party against whom the award was made promised to pay it on a subsequent week day, held that this was a ratification of the award.

So in *Sumner v. Jones*, 24 Vt., 317, where a horse was sold and a note taken for the price on Sunday; in a suit on the note, it was proven that defendant retained the horse and made two partial payments on the note on work days; and this was held to be a ratification of the contract, and that the plaintiff was entitled to recover on the note for the balance due.

In *Smith v. Case*, 2 Oregon, 190, the plaintiff loaned the defendant money and took his note on Sunday. On a subsequent week day, the defendant promised to pay the money. The complaint set out the note and the new promise. On demurrer, held that the retention of the money loaned and the promise to pay it was a ratification of the contract.

In *Reeves v. Butcher*, 2 Vroom, 225, it was held that the payment of interest on a note made on Sunday did not of itself amount to a new promise to pay the note; that it required an express promise to pay, etc.

In *Perkins v. Jones*, 26 Ind., 449, held that the mere retention of property or money received on a Sunday contract was not an affirmance of the contract, but that it might be ratified by a subsequent promise. See, also, *Smith v. Bean*, 15 N. H., 577; Story on Con., sec. 619.

In this case it appears that West kept the land, and honestly owed Crawford the balance of purchase money for which the

note was given; and we think the better rule is, that he could ratify the note by an express promise made on a week day to pay it, though his promise would be no ratification of the contract as to Mock, who signed the note as surety.

A new promise will revive a debt barred by limitation or discharged in bankruptcy. There is supposed to be in such cases a moral obligation which is a consideration for the new promise. The moral obligation resting upon West in this case, to pay the debt, was certainly as strong if not stronger than it would have been had the note been barred by limitation or discharged by bankruptcy.

Perhaps, under the common law system of pleading, the new promise should be set up by replication to the plea that the note was executed on Sunday; but by our code, there can be no reply except upon the allegation of a counterclaim or setoff in the answer. Gantts' Dig., sec. 4579. Hence it was competent to prove the new promise without a reply.

V. The plaintiff introduced some evidence conducing to prove that Mock did not in fact sign the note on Sunday, but signed it at the house of one Marrs on Monday.

The defendants then introduced a number of witnesses, who swore that Mock was not at Marrs' house on Monday, or that they were there and did not see him there.

Plaintiff then, after the defendants had closed, offered to introduce and prove by other witnesses that Mock was at Marrs' house on Monday, but the court refused to permit them to be introduced.

Whether Mock was at the house of Marrs on Monday, or not, seems to have been a circumstance connected with the disputed question, whether he signed the note on Sunday or Monday. If he signed the note on Monday, it was, as we have seen from authorities cited, a valid note as to him; and we think the evidence offered by the plaintiff to rebut that

introduced by the defendants as to the circumstance or fact in question was admissible for what it was worth. Other questions are presented by the record, but they are not pressed by appellant's counsel, and we shall not lengthen the opinion by noticing them.

The importance of the principal questions decided, and their novelty in this state, must be an apology for the length of this opinion.

For the errors above indicated, the judgment must be reversed, and the cause remanded for a new trial.