DAVID SHAPIRO *vs.* BOSTON AND MAINE RAILROAD.

Worcester.   September 30, 1912. — October 19, 1912.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & DECOURCY, JJ.

*Carrier,* Of goods.   *Railroad.   Agency.*

In an action against a railroad corporation by the indorsee of a bill of lading of a car load of oats shipped from the State of Indiana for the loss of a part of the oats in transit, for which the plaintiff sought to hold the defendant liable as the last carrier, it appeared that there was written in the bill of lading after the word "Route" the name of a railroad corporation other than the defendant followed by a contraction of the word "Delivery" and that on the face of the bill of lading was stamped a provision that "charges at destination should be collected" at a rate named.  There was evidence that the car in question was received by the defendant in the State of New York and was transported by the defendant to the city of its destination in this Commonwealth, that it there was placed by the defendant on a "circle track" from which it was taken by a switching engine of the railroad corporation named as above in the bill of lading to a freight yard of such other corporation, that the plaintiff was notified by the defendant that the car was in the freight yard of the other corporation, whereupon he went to the office of the defendant with his bill of lading and paid to the defendant all the transportation charges including the charge for shifting the car from the "circle track" to the freight yard of the other corporation, that the car then was unloaded by the plaintiff in such freight yard, and that the plaintiff had no communication with the other corporation.  *Held,* that on this evidence it could be found that the defendant was not an intermediate carrier but itself as the last carrier delivered to the plaintiff the oats that remained in the car, having employed the other railroad corporation as its agent to haul the car to the freight yard of that corporation and having hired the use of the freight yard for the delivery of the oats.

LORING, J.  This is an action for the loss of three hundred and six bushels from a car load of oats in transit between Kentland, Indiana, and Worcester, Massachusetts.  The plaintiff as indorsee

of the bill of lading sought to charge the defendant on the ground that it was the last carrier and so liable under the rule of *Moore* v. *New York, New Haven, & Hartford Railroad,* 173 Mass. 335, and *Garvan* v. *New York Central & Hudson River Railroad,* 210 Mass. 275, where the earlier cases are collected. The presiding judge * directed a verdict for the defendant, and the case is here on an exception to that ruling.

In the words of the bill of lading, the oats were "Consigned to [the] order of *McCray Morrison & Co*     Destination, *Worcester* State of *Mass* County of —— Notify *D. Shapiro*     At *Worcester*     State of *Mass*     County of ——     Route, *Boston & Albany Delvy.*" Of the above words those in italics were written and the others were the printed words of the bill of lading blank. On the face of the bill of lading were stamped these words: "Charges at destination should be collected at 17 cents per 100 pounds."

The car in question was delivered by the Delaware and Hudson River Railroad Company to the defendant on its tracks in Mechanicsville in the State of New York, and was transported by the defendant over its tracks some one hundred and fifty miles to the city of Worcester. On its arrival there it was placed by the defendant on the "circle track." From a plan made part of the bill of exceptions it appears that this "circle track" connects the tracks of the defendant (which, coming from a northerly direction, end in the Union passenger station) with spur tracks of the Boston and Albany railroad which lie north of its main line tracks. The main line tracks of the Boston and Albany railroad, running east and west, pass through the Union Station. These spur tracks to the north of them diverge from the Boston and Albany main line tracks about half a mile east of the Union Station, and the freight yard tracks of the Boston and Albany railroad lying to the south of its main line tracks diverge from them at about the same place. From the "circle track" the car in question was taken by a Boston and Albany switch engine to the switch in the main line tracks about half a mile east of the station, then across the main line tracks and back on the south side of them to the Boston and Albany freight yard, opposite to and south of the Union Station. It must be taken on the bill of

---

* *Irwin,* J.

exceptions that the car here in question was unloaded by the plaintiff in the Boston and Albany freight yard. The loss of the three hundred and six bushels was discovered in the unloading. A crack was then found in the bottom of the car and there was evidence tending to show that the oats had dropped out through it.

Where, as in the case at bar, goods are transported to their destination by more than one carrier, the duty of an intermediate carrier is to transport the goods to the end of its line and there deliver them, with the accompanying way bill, to the next carrier. And it is the duty of the last carrier, on receiving the goods with a way bill showing (as in the case at bar) back charges to be due not to relinquish possession and so the lien to secure the back charges until they have been paid in full; and it is its duty, also, upon receiving payment of all charges, to deliver the goods to the consignee. The case at bar therefore resolves itself into these questions: (1) Were the jury bound as matter of law to find that the defendant railroad company acted as an intermediate carrier, that is to say, that it delivered the oats not lost in transit to the Boston and Albany railroad, to be delivered by it to the consignee on payment to it of all charges due for the transportation of them from Kentland, Indiana, to Worcester, Massachusetts, including a Boston and Albany delivery? Or on the other hand (2) were the jury warranted in finding that the defendant, after transporting the oats to the point of destination (the city of Worcester), delivered them itself to the consignee, in which case it used the Boston and Albany freight yard as its yard, and employed that company to haul the oats from the "circle track" to that yard as its (the defendant's) agent? It is stated in the bill of exceptions that "The plaintiff was notified that the car had arrived in Worcester and was in the Boston and Albany freight yard, whereupon he went to the office of the defendant company, with his bill of lading, and paid to the defendant company all the charges then due for the transportation of said car from Kentland to Worcester, including the shifting of said car from the circle track to the place in the Boston and Albany freight yard where it was unloaded. The amount of charge for such transfer of the car from said circle track to the Boston and Albany freight yard was adjusted between the defendant company and the Boston and Albany Railroad Company, and the plaintiff had nothing to do therewith."

Although it is not stated in the bill of exceptions that this notice (that the car was in the Boston and Albany freight yard) was given by the defendant, it is a fair if not the only inference from what is stated there that it was given by it; for on receiving this notice the consignee went not to the office of the Boston and Albany Railroad Company, but to the office of the defendant. And, as the bill of exceptions does not disclose any visit of the plaintiff to or communication by him with the Boston and Albany Railroad Company, the inference could be made that he received the oats under an order from the defendant consequent on his paying to it the charges due on them.

If these facts were found by the jury, the defendant did not deliver the oats to the Boston and Albany Railroad Company, to be delivered by it as the last carrier to the consignee, but did itself, as the last carrier, deliver them to the consignee, employing the Boston and Albany Railroad Company as its agent to haul the car to the Boston and Albany freight yard, and hiring the use of that yard as its yard for the delivery of these oats. The same conclusion was reached in *Western & Atlantic Railroad* v. *Exposition Cotton Mills,* 81 Ga. 522, a case similar to the case at bar. See also in this connection *Atlanta National Bank* v. *Southern Railway,* 106 Fed. Rep. 623. In the case of *Missouri Pacific Railway* v. *Wichita Wholesale Grocery Co.* 55 Kans. 525, relied on by the defendant, it was known that the loss occurred while the goods were in the possession of a railroad company which stood in the position in which the Boston and Albany stood in the case at bar. For that reason the question whether such a carrier is the last carrier within the rule of *Moore* v. *New York, New Haven, & Hartford Railroad, ubi supra,* did not arise.

*Exceptions sustained.*

*R. B. Dodge,* (*S. G. Friedman* with him,) for the plaintiff.
*C. M. Thayer,* for the defendant.